ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* STEWART.

## Opinion delivered June 12, 1916.

1. MASTER AND SERVANT—INJURY TO LOCOMOTIVE ENGINEER—QUESTION FOR JURY.—Plaintiff, a locomotive engineer, was injured when he jumped from the cab of his engine after discovering that a collision was imminent, with a switch engine, on a track crossing the track upon which he was proceeding; plaintiff had been given a signal by the yardmaster to proceed; *held*, it was a question for the jury, as to whether this plaintiff was negligent in not keeping his engine under control.

2. MASTER AND SERVANT—ABROGATION OF RULE—ACT OF RAILWAY YARDMASTER.—A railway yardmaster has no authority to unmake rules which have been promulgated by the company for the guidance of all its servants, and it is his duty to enforce them or to report infractions thereof, and his continued acquiescence in the violation of one of the rules constitutes, *pro tanto*, an abrogation thereof.

3. MASTER AND SERVANT—ABROGATION OF RULE—ERRONEOUS INTERPRETATION.—An erroneous interpretation by servants of an unam-

biguous rule, where they are under a duty to obey it, does not amount to a modification or abrogation of the rule.

4. MASTER AND SERVANT—VIOLATION OF RULE—RECOVERY—COMPARATIVE NEGLIGENCE—FEDERAL STATUTE.—Where plaintiff, a locomotive fireman, was injured, while engaged in interstate traffic, his own negligence in violating a rule of defendant company, will prevent his recovery of damages, except such as are allowed by the Federal statute for the comparative proportion attributable to the negligence of the company.

5. MASTER AND SERVANT—INJURY TO SERVANT—OPERATION OF TRAIN IN YARD—ABROGATION OF RULE—QUESTION FOR JURY.—Plaintiff, a locomotive engineer, was injured by jumping from his engine cab, upon discovering that a collision with a switch engine was imminent. *Held*, in submitting the issues to the jury, that it was error to submit an instructions which omitted the issue of whether plaintiff was keeping his engine under control, and operating it, at the time of the injury, within a certain speed limit, as required by the rules of defendant company, and also the issue as to whether such rules had been abrogated. It was also error to fail to instruct specifically on the issue of excessive speed.

6. MASTER AND SERVANT—ABROGATION OF RULES—PROOF.—It is a question for the jury, whether rules promulgated by the master, have been abrogated.

Appeal from Lincoln Circuit Court; *A. H. Rowell,* Special Judge; reversed.

*E. B. Kinsworthy,* for appellant.

1. A verdict should have been directed for appellant. There was no evidence to sustain the verdict. Plaintiff violated the rules of the company which caused the accident. 100 Ark. 526, 533; 97 *Id.* 443. Stewart's testimony is absolutely contradicted by the physical facts. 100 Ark. 380; 157 Fed. 347; 86 Pac. 472; 74 Kans. 256. Failure to obey the rules was negligence. 100 Ark. 380; 140 S. W. 544; 120 Ark. 61; 52 Ark. Law Rep. 312; 119 Ark. 349; 174 Fed. 352. Neither custom nor order can justify a servant in doing an act which is negligence *per se.* 212 Mo. 338; 244 Mo. 647; 193 *Id.* 715; 176 *Id.* 547; 87 *Id.* 295; 94 Ala. 285; 109 *Id.* 256; 95 U. S. 439; 43 Kans. 145; 56 Va. 710; 161 Fed. 722; 249 Mo. 509; 110 *Id.* 394; 60 Fed. 370; 23 L. R. A. (N. S.) 768; 157 Fed. 347; 80 *Id.* 495. *"Under control"* means to stop within vision. 86 Pac. 1053; 200 Fed. 359.

An employee has no right to violate a rule of the railroad company, even if ordered to do so by an officer or superior. 22 S. E. 833, 836, par. 4; 27 N. E. 110; 145 N. Y. 190. The "high ball" had nothing to do with the accident.

2. The court erred in refusing to give defendant's instruction No. A. No other instruction was given covering this point. The violation of a rule by an employee is negligence *per se*. 174 Fed. and cases *supra;* 100 Ark. 380.

3. The high ball did not give the plaintiff any authority to violate the rules of the company. 145 N. Y. 190; 63 Fed. 228; 60 *Id.* 370; 157 *Id.* 347; 200 *Id.* 359; 86 Pac. 1053; 20 So. Rep. 67.

4. The court erred in refusing to give instruction No. F for defendant. 119 Ark. 349; 178 S. W. 320; 200 Fed. 359; 52 Ark. 45.

5. It is error to refuse a specific instruction correctly and clearly applying the law to the facts in a case, even though the law, in a general way, has already been covered. 69 Ark. 134; 82 Ark. 499; 87 *Id.* 243; 96 *Id.* 206.

6. The high ball was not the proximate cause of the injury. If subsequent to the original negligent act, a new cause intervened * * * the original negligence is too remote. 87 Ark. 576; 97 *Id.* 276; 104 *Id.* 506; 91 *Id.* 260.

7. An instruction which ignores a material issue about which the evidence is conflicting is misleading and prejudicial. 93 Ark. 564.

8. The defense of assumed risk has not been abolished under the Federal Act. 177 S. W. 875.

9. The verdict is excessive.

*Pace, Seawell & Davis,* for appellee.

1. The verdict is sustained by the evidence. The yardmaster was in complete charge of the yard; appellee obeyed the signal and did not violate any rule of the company. He was running under control. Further, the rules of the company had been abrogated by customary viola-

tion when a highball signal was given. The finding of the jury is final. 77 Ark. 1; 115 Ark. 308; 88 *Id.* 204; 12 Cyc. 1270. Disobedience of a rule in compliance with the instruction of a representative of the master does not constitute contributory negligence. *Ib.* 1274; 194 U. S. 136; 88 Ill. App. 614. See also 94 Tex. 100; 130 Mo. 657; 92 *Id.* 359; 118 Ky. 166; 106 Minn. 281; 132 Mo. App. 380; 37 Mont. 575; 214 Pa. St. 252; 214 Pa. 252; 125 S. W. 45; 41 Kans. 661; 89 Ind. 453; 3 Labatt, Master and Servant (2 ed.), 1137; 98 Ark. 232; 202 U. S. 438; 227 *Id.* 559; 196 Mass. 705.

Habitual violation of a rule is an abrogation, if known to the master. Cases *supra;* 77 Ark. 405; 166 Fed. 1; 105 Ark. 334; 88 *Id.* 204.

2. But the company is liable, even if the act of the yardmaster in giving the highball signal did not abrogate the rule. Under the Federal statute contributory negligence is not a bar. 115 Ark. 316. The act of the yardmaster was negligence for which the master was liable.

3. The cases cited by appellant do not apply. There was no error in refusing the instructions asked by defendant. No. A invades the province of the jury. 101 Ark. 376; 188 Fed. 55; 26 Cyc. 1269; 25 L. R. A. 320. It is misleading. No. 7 is not the law. 84 Ark. 74; 105 *Id.* 334; 88 Ark. 204; No. B ignores the evidence as to the abrogation of the rules. No. F is abstract and misleading. No. 17 made the act of appellee in failing to keep a lookout negligence. 98 Ark. 202, etc.

4. Appellee's instructions were correct. 115 Ark. 308. The court left the question of negligence, contributory negligence, etc., to the jury. 91 Ark. 388; 82 *Id.* 11; 87 *Id.* 443; 92 *Id.* 554. Appellee was not employed in interstate commerce at the time of the injury. 233 U. S. 473; 238 *Id.* 260.

5. The verdict is not excessive. 105 Ark. 533; 114 *Id.* 224; 113 *Id.* 265.

McCulloch, C. J. The plaintiff, Charles Stewart, was engaged in the service of the defendant as a locomo-

tive engineer and received personal injuries while he was running a train through the railroad yards at Little Rock. This is an action against the company to recover compensation for his injuries, which are alleged to have been caused by negligence of other servants of the company. It is conceded that the service being performed by the plaintiff at the time of his injury was connected with interstate traffic so as to bring the case within the operation of the Federal Employers' Liability Act. Plaintiff was bringing an extra freight train from Pine Bluff to Little Rock, and as he came through the Little Rock yards his fireman discovered a switch engine on the track ahead, and when plaintiff discovered that a collision was impending, he shut off the throttle and put on the emergency brakes and jumped from the engine, and in doing so he fell upon the edge of the track and received serious injuries.

Plaintiff's testimony was that he was coming along at a speed of eight or nine miles an hour, and that as he approached a curve of the track the yardmaster came out from the yard office and first looked around the curve and then turned and gave him the "high ball" signal, which meant that the track was clear and that he could proceed expeditiously, and that as the engine started around the curve the fireman discovered the switch engine ahead and called out to him "jump," which he did, after having, as before stated, shut off the throttle, put on the brakes and opened the sand. Plaintiff's train was running north and the switch engine was coming south. Plaintiff's fireman stepped from the engine when it lacked a few feet of striking the switch engine and was not injured. The engineer on the switch engine and the other operatives also escaped unhurt. The testimony of the plaintiff tends to show that his engine would have come to a stop before it reached the switch engine if the latter had been properly controlled, but that the switch engine was allowed to run on and produce the collision. On the other hand, all the other eye witnesses testified

that the switch engine came to a stop and turned backward and ran about forty-five feet before plaintiff's engine struck. The testimony of the plaintiff also tended to show that the yardmaster could have seen the switch engine from the point where he was standing when plaintiff says that the "high ball" signal was given.

Mr. Brown, the yardmaster, was introduced as a witness, and testified that he did not give the plaintiff any signal at all, but that the plaintiff's engine came along, running at a speed of at least fifteen miles an hour, and that just before it reached the yard office he heard the switch engine whistle back up the track and he looked around and it was in sight and appeared to have come to a stop, and that when he looked toward plaintiff's engine again he saw the plaintiff making the jump. Other testimony adduced by the defendant tended to show that the plaintiff was running his engine at a rate of from fifteen to twenty miles an hour when he approached the curve and jumped from the engine.

Certain rules of the company, regulating the handling of trains through the yards, were introduced in evidence and they are relied on as establishing negligence on the part of the plaintiff in violating those rules.

Rule A-12 reads in part as follows: "Freight trains will not exceed a speed of ten (10) miles per hour between Argenta and South yard limits East Little Rock yard."

Rule A-16 reads as follows: "Second and inferior class trains and extras must run under control through yard limits at Little Rock, Argenta, East Little Rock, Pine Bluff and McGehee. In case of accident, responsibility rests with the approaching train."

Those rules were in force at the time of the injury, and plaintiff had a copy of the book of rules with him on his engine and was familiar with them.

It is agreed that running "under control" means to run trains so as to stop within vision, or, in other words; to keep the engine under such control that it can be stopped within view of any object which may appear ahead

on the track. Plaintiff's train was "the approaching train" within the meaning of the rules. It was also conceded that the switch engine belonged to the same class of trains and had equal right-of-way, that the switch engine was rightfully on the main track at the time of the collision, and that the only limitations upon the right to operate it there were those prescribed by the rules herein mentioned.

In order, however, to obviate the force and effect of the rules as written, plaintiff undertook to show that a custom had been built up whereby the giving of the "high ball" signal by the yardmaster was construed to be an assurance that the track was clear, and as a direction to hurry on without regard to the rule requiring that the engine be kept under control. There is a sharp conflict in the testimony on this branch of the case. Several witnesses introduced by plaintiff testified as to that custom. In view of the controversy concerning the effect of the testimony, it is well to set out that which appears to be the strongest in favor of the plaintiff. The following extracts are taken from the testimony of witness Smith, who had worked for defendant as a locomotive engineer, and showed familiarity with the customs and the operation of trains.

Q. Now, what do you mean by "under control?"

A. Why, you would handle your train in a way that you could stop it within the distance that you could see, that is what I consider under control, and that railroads generally consider to be under control.

Q. Within the distance of your vision down the track?

A. Yes, sir.

Q. State whether or not in passing through the yards how one proceeds—do you proceed under control?

A. Yes, sir.

Q. Now, who has charge of the yards?

A. The yardmaster.

Q. What power has the yardmaster in the yards?

A.   Relative to the handling of trains through the yards, he has power to stop you, and hold you any place he wants you, or head you in on any track he sees fit to, or tell you to proceed.

Q.   Now, then, suppose you are proceeding through the yards, and are approaching a curve, and as you approach the curve the yardmaster gives you what is called a high ball—what does that mean to the engineer?

A.   That means for him to go ahead, and go through the yards; that he wants to occupy that track or wants you to get off that track, and through the yards.

Q.   Whenever he gives you a high ball it is an order to you to hurry through the yards?

A.   Yes, sir; that the track ahead of you is clear.

Q.   That is a rule that has obtained wherever you have worked as an engineer, in coming through the yards of the various systems you have worked for?

A.   Yes, sir; that is the rule that is practiced.

Q.   And it means that the track is clear?

A.   Yes, sir.

Q.   Now, it is true that switch engines have a right to occupy the main line—that is, as against second and third class trains, but who has a right to put them on there?

A.   The yardmaster or some one directly under the yardmaster.

Q.   Then, if the yardmaster gives him the high ball, and indicates the track is clear, it is the duty of the yardmaster to know it is clear, isn't it?

A.   Yes, sir; absolutely.

CROSS-EXAMINATION.

Q.   Mr. Smith, a second and third class freight train passing through the yard limits at East Little Rock, or and other yard, for that matter, when it enters the yards, it is the duty of the engineer to pass through that yard with the engine under control, isn't it?

A.   Yes, sir.

Q. That means that he must travel under such speed as to be able to stop within vision; if he goes into the yards, and does not see the yardmaster at all, it is his duty to proceed through the yards with his engine under control?

A. Yes, sir.

Q. The yardmaster has no right, or no signal given by him would authorize the engineer to proceed with his engine out of control, would it?

A. No, I will answer, no, to that question.

Q. That would violate the printed rules, wouldn't it?

A. Yes, sir; but if he received a signal from that yardmaster—what is commonly called a high ball by the railroad men, that would give him a right to hurry through that yard. That would be the same thing as telling him to hurry through this yard.

Q. Do you mean to tell this jury that any kind of a signal would obviate or do away with the printed rules about going through that yard with your engine under control?

A. I do.

Q. Mr. Smith, suppose a man comes along there with a freight train under control, and should see the yardmaster, and the yardmaster would high ball him, wouldn't he still have to continue under control?

A. No, not absolute control. Of course, he wouldn't go fifty miles an hour through the yards, but he would hurry through and would increase his speed and get through. On a curve like that you would have to proceed slow around that curve if you didn't get a signal— any man with ordinary intelligence, of course, would know that—but when a yardmaster comes out there, and gives you a signal, what does he give you that signal for if he wasn't wanting you to hurry along, because he knows you will proceed under control anyway.

Q. He knows you will proceed under control when you get the signal?

A.   Yes, sir.

Q.   And, even after you get the signal, it is your duty to proceed under control?

A.   No, sir.

Other witnesses testified to the same effect. Plaintiff testified that he was running under control at the time he received the "high ball" signal from the yardmaster and also when the fireman notified him that the switch engine was ahead and that a collision was imminent. The plaintiff's engine ran only a short distance after the "high ball" signal was received, before the fireman discovered the switch engine ahead and gave the alarm.

(1)   It is earnestly insisted that according to the undisputed evidence plaintiff's injuries resulted solely from his failure to observe the rules of the company promulgated for the use of himself and other engineers for their own protection, and that for that reason a peremptory instruction ought to have been given to the jury to return a verdict in defendant's favor. We are of the opinion that the evidence was sufficient to warrant the submission of certain issues to the jury, and that the court did not err in refusing to give a peremptory instruction. The switch engine, with which plaintiff's engine collided, was rightfully on the main track, and there is no negligence shown in that regard, nor does it appear that the men in charge of the switch engine were guilty of any negligence which contributed to the plaintiff's injury. There is some conflict whether or not the switch engine was brought to a stop before the collision occurred, but the plaintiff was not injured in the collision itself, but by reason of being compelled, for his own safety, to jump from the engine when he discovered the switch engine on the track and that the collision was imminent. Even if those in charge of the switch engine were negligent in failing to stop their engine in time to prevent the collision, that negligence did not contribute in any degree to the plaintiff's injury. Therefore, the only act of negligence which the testimony tended to establish, if any at

all, was the act of Mr. Brown, the yardmaster, in giving a signal to proceed which constituted, according to evidence adduced, an assurance to the plaintiff that the track ahead was clear. Now, with that issue decided in favor of the plaintiff, he was entitled to have the jury determine whether or not he was guilty of negligence in failing to keep his engine under control as he approached the curve. The other issue in the case is whether or not he was exceeding the ten mile limit of speed at the time.

(2-3) The rules of the company are unambiguous and call for no construction. It is contended that the testimony adduced by the plaintiff only tends to show the interpretation of those rules by the witnesses and is not sufficient to show an abrogation of the rules. While it is true that the rules are too plain to admit of any doubt about the proper construction, yet the testimony of the witnesses tends to show that there had been built up a custom in disregard of the rule, to the effect that whenever the yardmaster gave the signal to proceed, which amounted to an assurance that the track was clear ahead, then the engine was run without being kept under control. If this testimony was true, it amounted to an abrogation of the rule to that extent so as to permit an engine to be run otherwise than under control when the proper signal had been given by the yardmaster. This is not merely an interpretation of the rule by the witnesses, but it amounts to substantive proof that the rule had been habitually disregarded to that extent for a sufficient length of time to constitute a modification of the rule. The yardmaster had no authority to make or unmake those rules which had been promulgated by the company for the guidance of all of its servants, but it was his duty to enforce them or to report infraction thereof, and his continued acquiescence in the violation of one of the rules constituted *pro tanto,* an abrogation. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405. The testimony does not, however, warrant a conclusion that any custom had been built up in disregard of the rule which limited the

rate of speed through the yards to ten miles per hour. The testimony of the plaintiff himself and, possibly, that of another of the witnesses which he introduced, tends to show that the rule had been interpreted to mean that when the "high ball" signal was given by the yardmaster, the speed could exceed ten miles per hour, but there was not the slightest evidence that the rule had been habitually violated. An erroneous interpretation of this unambiguous rule by the employees who were in duty bound to obey it, would not constitute a modification or abrogation thereof, for it is only acquiescence in habitual violation of such rules that amounts to abrogation. So we think that there was enough testimony to justify a submission to the jury of the question whether the rules had to the extent indicated been abrogated, and whether or not the plaintiff was proceeding within the rules as thus modified when he was injured.

(4)    The effect of a violation by an employee of the rules prescribed for his own protection is too well settled by decisions of this and other courts to call for citation of authorities. The cases are cited in the briefs of counsel. If the rule was violated by plaintiff, it constituted negligence *per se* which will prevent his recovery of damages except such as are allowed by the Federal Statute for the comparative proportion attributable to the negligence of the company.

The instructions given and refused are too long to admit of their being set out in full in this opinion, but we quote such as are essential to a proper consideration of the case. The court gave instruction No. 1, at the request of plaintiff, which reads as follows:

"1.    The jury is instructed that if you believe from a preponderance of the evidence that plaintiff was engaged as engineer in running an engine and caboose from Pine Bluff to Argenta, Arkansas, and that while passing through East Little Rock yards of the defendant, on its main track, yardmaster Brown signalled him to proceed; and, if you find it was plaintiff's duty to obey said signal

and that plaintiff did so, and that Brown had the authority to give it, and obeying the same the engine upon which plaintiff was riding, while yet in the East Little Rock yards, collided with the switch engine of the defendant that was occupying said main line, and that plaintiff jumped from said engine before said collision and injured himself, and if you find that the defendant, in permitting said main line to be occupied with a switch engine and giving the plaintiff, through its yardmaster, a signal to proceed, if you find that said signal was so given, failed to exercise ordinary care for the reasonable safety of plaintiff, and that its act in permitting said main line to be occupied at said time and place by the switch engine, and in giving the signal, if any, to plaintiff to proceed was negligence and the proximate cause of the injury; and, if you find that plaintiff, at the time, was exercising ordinary care for his own safety and had not assumed the risk, you will find for the plaintiff and assess his damages at such a sum as you may find from the evidence will be a reasonable compensation for the injuries received, if any; provided, you further find that at the time the plaintiff jumped from the engine he, in good faith and without fault or negligence on his part to cause it, believed that he was in a perilous position and that he acted as a reasonably prudent person would have done under similar circumstances and conditions for his own safety."

The court also gave, at the request of the defendant, the following instruction:

"7.    The court instructs you that the evidence in this case shows that the defendant company had certain rules regulating the operation of trains and switch engines in the yards in East Little Rock where plaintiff was injured, and that these rules were known to the plaintiff, that one of these rules gave switch engines switching within the yards in East Little Rock the right to use the main track upon the time of all trains except first class trains. The evidence further shows that the engine upon which plain-

tiff was riding and which he was operating was not a first class train and was subject to the rules giving the switch engine the right to be upon the main line upon the time of the engine being operated by plaintiff. The evidence also shows that there was a rule which required the plaintiff to operate his engine through the yards where he was injured so as to have it under control, so that if an engine or other obstruction should show upon the track of the main line, he could stop his engine before striking the same. You are instructed that if you believe from the evidence that the plaintiff was not operating his engine under control at the time of the accident and was operating it in violation of said rules, then the court tells you, as a matter of law, that the plaintiff himself was negligent, and if you believe that his injury was caused solely on account of his not operating his engine under control, or on account of his not keeping a proper lookout, or on account of his not taking due care in operating the same, then your verdict should be for the defendant although you may believe that previous to that time he had been highballed by the parties mentioned in his complaint.''

(5) It is insisted that instruction No. 1 is erroneous in omitting all reference to the issue as to whether or not the plaintiff was acting in violation of the rules at the time the collision occurred. We think that contention is well taken. The instruction does in fact leave it open to the jury to determine whether or not it was the plaintiff's duty to obey the signal which was given by the yardmaster, but it does not make any reference to the other rules which require that an engine be kept under control and that the rate of speed should not exceed ten miles per hour. Instruction No. 7 is all that the defendant could have desired, so far as concerns the rule requiring the engine to be kept under control, but that instruction was in direct conflict with the one given at the instance of the plaintiff. The jury might have found, under the first instruction, that it was plaintiff's duty

to obey the signal, and that it meant.for him to proceed, and the jury could have found in plaintiff's favor even though they concluded that he had violated the rule in failing to keep the engine under control. If there had been no conflict in the testimony concerning the partial abrogation of the rule by the custom said to have been built up with regard to the signal, then the effect of this instruction might have been different, but there was a serious conflict on that and there was enough testimony to warrant the jury in finding that there was no such custom in existence which amounted to a modification or abrogation of the rule to any extent. Therefore, it was erroneous to tell the jury that the plaintiff was entitled to recover if he was proceeding in obedience to the signal without also submitting the question whether or not the rule which required him to keep his engine absolutely under control had been abrogated. If the rule was in force, its observance was the measure of his care for his own safety and it was proper to leave it to the jury to determine whether or not he was exercising ordinary care. In addition to that, there was, as has already been pointed out, no testimony at all to the effect that the rule had been abrogated with respect to the ten mile limit of speed, and the instruction was certainly erroneous in ignoring that feature of the case. There was a sharp conflict as to whether or not the plaintiff was violating the maximum speed limit, and if the jury found that he was running more than ten miles an hour it constituted negligence on his part which would prevent full recovery.

Error is also assigned in the refusal of the court to give the following instruction, requested by defendant: "(A) You are instructed that the plaintiff admits in his evidence that there was a rule of the railroad company in force, at the time of his injury, that prohibited the running of a freight train over ten miles per hour, at any point in the yards where he was injured, so if you believe from the evidence in this case that the plaintiff was running his engine at a speed exceeding ten miles

per hour, at the time he discovered or was told that there was an engine ahead of him, then the court tells you as a matter of law that the plaintiff would be guilty of negligence.''

That instruction should have been given, for, as we have already pointed out, there is no evidence whatever tending to show an abrogation of the rule mentioned in that instruction, and if the jury found that it had been violated it prevented full recovery. Defendant was entitled to have that issue specifically submitted to the jury, and it was error to refuse this instruction.

(6) Instruction No. B, which reads as follows, should also have been given: ''(B) You are instructed that, although you may believe that the yardmaster, Brown, gave the plaintiff a ''highball'' and although you may believe this indicated that the track ahead was clear and indicated plaintiff could proceed, this did not give the plaintiff any authority to proceed with his train at any greater speed than the rules of the defendant permitted, if you find these rules were in force and known to the plaintiff.'' That instruction submitted to the jury the whole contention of plaintiff with respect to both rules, that fixing the maximum limit and the one requiring the engine to be kept under control. It told the jury that if those rules were in force and known to the plaintiff, a violation thereof by him would constitute negligence. It was a question for the jury to determine from the evidence adduced whether or not the rules were in force or whether they had been to any extent abrogated.

Another instruction, the refusal of which is assigned as error, reads as follows: ''(F) You are instructed that since the rules of the company introduced in evidence, were made for the protection of the plaintiff and were known to him, any usage or practice either on the part of the plaintiff or other employees, or on the part of the railway company tending to mislead the plaintiff in violation of same, if you should find that he was misled, would not relieve the plaintiff of the consequences of his

negligence in violation of the rules if you find he was negligent and would not excuse him therefor, and unless you believe from the testimony that the rules were abrogated, the plaintiff was negligent if he violated the same."

That instruction seems to have been especially framed to meet the rule of law laid down by this court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Steel,* 119 Ark. 349, where it was said: "If the rule was abrogated by proof of a custom of its long continued violation with the knowledge and acquiescence of the master, the violation of it by the deceased would not prevent a recovery for the injury, but since the rule was made for his protection and known to him, any usage and practice of the defendant tending to mislead him in the violation of it, short of its abrogation, would not relieve from the consequences of his negligence in violating it nor excuse him therefor." While the instruction follows closely the language of this court, we do not think that it was appropriate as an instruction to the jury for the reason that it was calculated to mislead. In laying down that rule of law, we were discussing the effect of the testimony and it was not intended as a statement of the law for use in an instruction to a jury. Of course, defendant was entitled to a submission of the question whether or not the rule was abrogated, but this instruction left no guide for the jury in determining to what extent violations of the rule would constitute an abrogation, and, therefore, we are of the opinion that this instruction was properly refused, not because it does not state correctly the law on the subject but that it is not such a statement as was calculated to place the issues clearly before the jury.

There are other assignments of error argued with respect to giving and refusing instructions, but it is believed that the foregoing discussion is sufficient to indicate our views of the law applicable to the case and will be sufficient guidance for the trial court when the case is again presented for trial.

For the errors indicated, the judgment is therefore reversed, and the cause remanded for a new trial.

Hart, J., concurs on the sole ground that the trial court erred in refusing to give instruction "A."