[Civ. No. 5488.   Third Appellate District.—May 26, 1936.]

NELLIE E. MYERS, as Administratrix, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

288

Clifton Hildebrand, Louis E. Goodman and Louis H. Brownstone for Appellant.

Devlin & Devlin & Diepenbrock and Horace B. Wulff for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against her pursuant to section 629 of the Code of Civil Procedure, notwithstanding the verdict of a jury which was previously returned against the defendant, Southern Pacific Company, for negligence in maintaining an alleged unsafe place in its railroad yard at Roseville where the plaintiff's intestate was required to work.

Prior to his death, George M. Myers, husband of the plaintiff, was employed by the Southern Pacific Company as a car checker in its railroad yard at Roseville for nine years. It was his duty to procure the numbers and destination of all cars in that yard which were destined for outbound trains, and to examine the seals and ventilators of all such cars which were loaded with produce to see that they were in proper condition and report the same to the manifest clerk at that yard. He was engaged in the performance of that duty at the time of the accident which resulted in his death. The defendant owns and operates an interstate railroad system including the main and side tracks at Roseville, together with the rolling stock and fruit cars upon which the deceased was working at the time of his death. This action is maintained under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51–59). The switching yard at Roseville includes an intricate system of tracks several miles in length. Track number 2 was adjacent to an icing plant and platform on its easterly side, which is 3,520 feet in length and about 16 feet in height. It was constructed and maintained by an independent corporation, The Pacific Fruit Express Company, for the purpose of furnishing icing facilities for the cars of the Southern Pacific Company which were loaded with fruit, produce and other perishable freight. The ice plant and platform were constructed in 1921, after track number 2 was laid. Midway along this structure adjacent to track number 2 the fruit company erected an iron ladder in 1924, extending from the ground to the top of the platform. The amended complaint alleges in that regard: "The Pacific Fruit Express Company negligently and carelessly constructed and maintained said steel ladder". This iron ladder protruded from the face of the platform toward the

track a distance of 8 or 9 inches. The space between the face of the platform and the nearest side of an average car was but 24½ inches. The ladder consumed 8½ inches of this space. This left only 16 inches clearance between the ladder and the face of adjacent cars. After the accident occurred this ladder was removed or set back plumb with the face of the platform. Signs were maintained at each end of the platform calling attention to the "Impaired Clearance". Printed rules of the Southern Pacific Company were enforced requiring all employees to "inform themselves as to the location of structures or obstructions where clearances are impaired". The deceased had worked in the Roseville yard for nine years and was familiar with the dangers attending his employment, including the impaired clearance and the dangerous ladder in the space between the icing platform and track number 2. He had often been seen checking cars in the vicinity of that iron ladder. There was, however, sufficient space between the ladder and a rolling car on track number 2 to permit a man to pass while he clung to the ladder on the side of the car. Mr. Bolles, who for many years worked for the defendant as a yard-man at Roseville, testified that he frequently rode a car through that space adjacent to the icing platform clinging to the ladder on the car, in both the daytime and the night-time. Several witnesses testified that an oral rule of the company existed prohibiting checkers from riding in the yard on the outside of cars. On the contrary, several witnesses, including the engineer and other yard employees of the defendant, testified they had often seen these checkers, including Mr. Myers, riding the cars from one point to another in the yard to expedite their work. At least one of these witnesses said that he had done this in the presence of the yard superintendent. No one testified that anyone had ever protested against that practice. One witness, McCullough, who had worked for the defendant in that yard with the deceased for several years, also testified that he had frequently seen Mr. Myers and other employees riding the cars in that manner in the presence of yard officials, without objection, along track number 2 and elsewhere in the yard. He denied that these men secretly "nipped" these rides, and inferred that they openly rode the cars with the approval of the yard officials.

The night of December 9, 1932, Mr. Myers was engaged in checking and examining produce cars which were due to leave Roseville on overland train number 488 shortly after the arrival of a freight train from Sacramento at 7 o'clock P. M. The accident which caused his death occurred at about that time. With the exception of thirteen empty fruit cars he had already checked the yard list of all cars which were to go east on that train. Forty-six cars which had been already checked were run back on track number 2 adjacent to the ice-packing plant. These thirteen empty cars had not been checked. Myers was engaged in completing that job when the switch-engine picked up the thirteen cars and ran them back on track number 2 to get them out of the way of the incoming freight train, of which they were to become a part. To save walking back a considerable distance to the point where these cars were to be stationed, and to expedite his time so that he could complete his duty before the train arrived from Sacramento, Myers climbed on to the ladder on the easterly side of one of these empty cars to ride it back along track number 2, to the place where it would be stationed. It was then dark. He carried a lantern. No one saw the accident, but a brakeman observed the sudden disappearance of his lantern when he reached a point opposite the platform ladder midway along the icing plant. An emergency signal promptly stopped the train. The body of Mr. Myers was found across the track within seven feet of the protruding ladder of the icing platform. He had evidently been knocked from his position as he clung to the ladder on the side of the moving car. Several cars ran over him. He died within a few moments thereafter.

A suit for damages was commenced. It was tried before the court sitting with a jury. The jury returned a verdict in favor of the plaintiff for the sum of $12,500. On motion of the defendant, under the provisions of section 629 of the Code of Civil Procedure, the trial judge set aside the verdict and rendered judgment in favor of the defendant notwithstanding the verdict. From that judgment the plaintiff has appealed.

In support of this judgment the defendant asserts that the doctrine of the "assumption of risk" precludes the plaintiff from recovering damages for the death of her husband under the circumstances of this case; that Mr. Myers was not en-

gaged in the performance of his duty at the time of his death, but, on the contrary, that he was riding on the outside ladder of a moving car in a place known to him to be dangerous, contrary to an established oral rule of the Southern Pacific Company, and that the dangerous ladder attached to the adjacent icing platform was constructed and maintained by a stranger to this litigation, and that its removal was not within the control of the defendant.

A motion for judgment in favor of a defendant notwithstanding a verdict previously rendered by a jury should be granted under the provisions of section 629 of the Code of Civil Procedure, only when it appears from a full and fair consideration of the whole evidence, viewed in a light most favorable to the plaintiff according to the same rule which applies to the granting of motions for nonsuit or for a directed verdict, that there is no substantial evidence to support one or more material issues necessary to uphold the verdict. (Sec. 629, Code Civ. Proc.; *Card* v. *Boms,* 210 Cal. 200 [291 Pac. 190]; *Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579]; *Tracey* v. *L. A. Paving Co.,* 4 Cal. App. (2d) 700 [41 Pac. (2d) 942]; *Landers* v. *Crescent Creamery Co.,* 118 Cal. App. 707 [5 Pac. (2d) 934]; *Locke* v. *Meline,* 8 Cal. App. (2d) 482 [48 Pac. (2d) 176].)

In the present case the burden was on the defendant to show either that the plaintiff's intestate met his death as a result of wilfully violating his employer's rule against riding rolling cars in the Roseville railroad yard, or that the maintenance of the iron ladder leading to the icing platform was a risk which was assumed by the deceased incident to his employment. It is uniformly held by a multitude of authorities that a servant assumes all the normal risks incident to his employment which are known to him or which, in the exercise of ordinary care on the part of a reasonably prudent person should have been known to and appreciated by him. (U. S. C. A., tit. 45, note 24, p. 448; *Qualls* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 112 Cal. App. 7 [296 Pac. 645].) If the record discloses a substantial conflict of evidence regarding the existence or violation of the alleged rule against riding the rolling cars in the railroad yard, or concerning the assumption of risk on the part of the deceased, the jury became the sole judge of these issues and under such circumstances a judgment notwithstanding the verdict would be erroneously granted.

■ It is a reasonable inference from the evidence adduced that the deceased was actually engaged in the course of his employment at the time he was killed. The Sacramento train was then due to arrive. His job of checking the cars which were to go out on that train had not been completed. Thirteen empty cars remained unchecked. He was actually engaged in obtaining their numbers, when they were picked up by the switch engine and run back out of the way on side-track number 2. His time to complete that work was limited. He mounted the rolling cars to save the time of walking down the yard a considerable distance to the point where they were to be stationed. His act of riding the cars was to expedite his work. In riding the cars he was therefore actually engaged in the course of his employment, unless he violated the rules against riding moving cars. At least it was a question for the jury to determine whether he was not then actually engaged in the performance of his duty. For the judge to determine, in view of the conflict of evidence adduced, that the deceased was not engaged in the performance of his duty was an invasion of the province of the jury.

We are also of the opinion the question as to whether the defendant enforced a rule against employees riding upon rolling cars in the Roseville yard was a problem for the determination of the jury since the evidence regarding that subject is conflicting. Such an order might be said to be important enough to have been included in the printed rules of the company. A bulletin of general written rules, consisting of twelve typewritten pages, was introduced in evidence. No rule prohibiting employees from riding on moving cars in the yard was included therein. We may assume no such written or printed rule was exhibited or enforced. But several employees of the defendant did testify that such an oral rule was called to their attention. On the contrary, several employees of the company testified that they had often seen employees openly riding cars in the yard at Roseville. Mr. Ferguson, an engineer who had worked for the company nine years, said he saw checkers riding the cars "to save long walks" in the performance of their duties. Mr. Brown, who had been employed in that yard for nine years, said he had frequently seen Mr. Myers and other yard clerks riding the cars. Mr. Bolles, who had worked as a

294

yard-man for the defendant for sixteen years, said he had often seen Mr. Myers and other checkers openly riding the cars in the yard, and that he had done so, even along side-track number 2 where the icing platform ladder in question was located. Mr. McCullough, who served the defendant as a brakeman for thirteen years, testified positively that he had often seen Mr. Myers and other yard clerks openly riding the cars ''in front of the yard-master'', and that it was the practice of yard employees to do so. It is true the last-named witness had been discharged from his position two or three years previously for the reason that he was injured in a railroad accident, and when he commenced suit against the company he was discharged. But that circumstance merely raised a question regarding his credibility which was a problem for the jury to determine.

The evidence of the four witnesses last mentioned leaves the reasonable inference that if a rule against riding cars in the Roseville yard was orally conveyed to some of the employees, it was not enforced. On the contrary, it may reasonably be inferred from the evidence that yard employees commonly rode cars in the presence of their superior officers without protest, that it was not expected the oral rule would be enforced, and that the deceased therefore rode the cars with the approval of the officers of the yard, and was not violating any rule in riding the car at the time of the accident. At least this question of violating an oral rule of the company was a problem for the determination of the jury. For the court to determine that the deceased violated the rule of the company against riding cars in the yard was therefore an invasion of the province of the jury.

█ Where there has been an habitual disregard of rules amounting to an abrogation thereof this custom will be sufficient to relieve an employee of a charge of contributory negligence. (*St. Louis etc. Ry. Co.* v. *Stewart,* 124 Ark. 437 [187 S. W. 920]; *San Pedro, L. A. & S. L. R. Co.* v. *Brown,* (Cal.) 258 Fed. 806.)

█ It does, however, appear without substantial conflict of evidence that the deceased actually knew of the presence of the dangerous protruding ladder on the side of the icing platform. The ladder was there in clear view during the entire nine years during which he worked in the Roseville yard. He had been seen to frequently check cars on side-

track number 2 around and about that very ladder. One witness testified that he had seen Mr. Myers riding cars down that side-track past the point where the dangerous ladder existed. Large conspicuous signs at either end of the icing platform advertised the "Impaired Clearance". It would seem to be impossible for any person to work throughout that railroad yard for nine years examining and checking cars daily in large numbers without observing and fully appreciating the grave danger of riding cars down track number 2 with a narrow clearance of only sixteen inches for his body to pass the platform ladder. We must assume that no reasonable person could avoid knowledge of the presence of that ladder and the danger of passing it while riding the adjacent side of a moving car. Under such circumstances we are impelled to hold that Mr. Myers assumed the risk of that danger, and that his widow is therefore precluded from recovering damages on account of his death. Upon that point there is no conflict of evidence. It must be true that Mr. Myers had forgotten the presence of the ladder, or did not realize on account of the darkness that he was so close to it when he was suddenly struck and knocked from the car. But thoughtlessness regarding a known danger is no excuse. (*New York etc. Ry. Co.* v. *McDougall,* 15 Fed. (2d) 283.)

The mere fact that the deceased may have been guilty of contributory negligence in riding a car along track number 2 in dangerous proximity to the adjacent platform ladder would not bar the plaintiff from recovering damages on account of his death as a result thereof. Section 53 of the Federal Employers' Liability Act (45 U. S. C. A., p. 379) provides in that regard:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

But the distinction between an assumed risk and contributory negligence is of vital importance in cases arising under the Federal Liability Act. (*Pryor* v. *Williams,* 254 U. S. 43 [41 Sup. Ct. 36, 65 L. Ed. 120]; 3 Elliott on Rail-

roads, 3d ed., p. 704, sec. 1288a.) In the case of *Choctaw, Okl. & Gulf R. R. Co.* v. *McDade,* 191 U. S. 64 [24 Sup. Ct. 24, 25, 48 L. Ed. 96], Mr. Justice Day said, regarding the exemption of the master from liability for injuries received by the servant on the doctrine of the assumption of risk, that:

"Where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and, in such case, cannot recover." (3 Elliott on Railroads, 3d ed., p. 700, sec. 1288.)

The assumption of risk rests on the intelligent acquiescence on the part of the employee and knowledge of the danger of the defective apparatus or place where he is required to work, and appreciation of the risk naturally incident to such employment under the particular conditions existing. In the present case if the plaintiff is barred from recovering damages for the death of her husband on account of his assumption of the risk of his employment, it is immaterial that he may have also been guilty of contributory negligence in riding the car into that precarious situation. Certainly he was not required by the defendant to ride the cars under such circumstances. There is absolutely no evidence to indicate that the railroad company required its checkers to ride the cars in the performance of their duties even to expedite their work. The courts have frequently held under the particular circumstances of the cases that the injured servants of railroads assumed the risk of their employments as a matter of law, and were therefore precluded from recovering damages. Among these cases which were based on impaired clearances are the following: *Southern Ry. Co.* v. *Carr,* 153 Fed. 106; *New York etc. Ry. Co.* v. *McDougall, supra; Carr* v. *Grand Trunk Ry. Co.,* 152 Mich. 138 [115 N. W. 1068].

The preceding cases were determined on the doctrine of assumption of risk as a matter of law on account of long terms of service of the employees having apparent knowledge

of the open and visible defect of apparatus or danger incident to their employment, such as the overhanging roof of a house, low bridges, permanent structures, fences, or poles adjacent to the railroad tracks, etc. The theory of these cases is that long service of the employees which necessarily brought them in daily or frequent contact with these visible and apparent dangers, charged them with the knowledge thereof so as to exempt the railroad companies from liability on the doctrine of the assumption of risk. This is the exact situation in the present case. This record contains no evidence to the contrary.

The case of *Kreitzer* v. *Southern Pacific Co.*, 38 Cal. App. 654 [177 Pac. 477], upon which the appellant relies, may be readily distinguished from the preceding cases. In the last-cited case the court says, on page 664:

"Deceased had never before done any work for defendant at night and this was his first service as watchman. So far as appears, his knowledge of the construction of this bridge and trestle was such only as he may have acquired in riding over it on a handcar to and from his work elsewhere two or three times a week for some months. It is not shown nor is it claimed by defendant that he knew anything about the provisions made for men working on the bridge to avoid passing trains except such knowledge as he had acquired in the two or three nights he had served as watchman before he was killed."

In the present case it is not denied that the deceased had full knowledge of the danger of the protruding ladder.

We are of the opinion the trial court properly held as a matter of law, under the uncontradicted evidence of this case, that the defendant is exempt from liability for the death of Mr. Myers for the reason that he must be deemed to have assumed the risk of attempting to ride the moving car past the dangerous ladder since he had full knowledge of its existence and the hazard of doing so.

But even though it should be assumed that this question of the assumption of risk was a problem for the exclusive determination of the jury, and not one to be decided by the court as a matter of law, there is another reason why it becomes necessary to affirm the judgment in favor of the defendant which was rendered notwithstanding the verdict of the jury.

The burden rested on the plaintiff to prove that the defendant constructed, maintained or possessed control over the location of the ladder in question, or it may not be held liable for the danger which it presented. The plaintiff has specifically alleged in her amended complaint that "The Pacific Fruit Express Company negligently and carelessly constructed and maintained said steel ladder." It is further alleged that the defendant permitted it to remain in that dangerous position. But it is not alleged that the defendant had any control over the location or removal of the ladder. The evidence is undisputed that the icing plant and the ladder were constructed after the side track was built. It does not appear that either the icing plant or the ladder was located on land belonging to the Southern Pacific Company. The negligence which is alleged in constructing and maintaining an ice platform ladder in dangerous proximity to side-track number 2 is specifically charged to a stranger to this litigation, and not to the defendant. The burden was on the plaintiff to affirmatively show that the death of Mr. Myers occurred through the fault of the defendant railroad company. She failed to do so. The uncontradicted evidence not only fails to show that the dangerous ladder was either constructed or maintained by the defendant, but, on the contrary, it is pleaded and conclusively shown that it was placed there by a stranger to this litigation and that the defendant had no authority or control over its maintenance or removal.

The judgment is affirmed.

Steel, J., *pro tem.*, and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 25, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 23, 1936, and the following opinion then rendered thereon:

THE COURT.—Appellant's petition to have the above-entitled cause heard and determined by this court, after judgment in the District Court of Appeal of the Third Appellate District, is denied. However, we withhold our approval of that portion of the opinion which holds the de-

fendant railroad company was not liable to the plaintiff for the reason that the ladder in question was maintained by a third party, the Pacific Fruit Express Company.