[Civ. No. 3718. Fourth Dist. June 9, 1948.]

JOHN LEWY, Appellant, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

Morris B. Chain for Appellant.

Leo E. Sievert, Robert W. Walker, J. H. Cummins, Frederic A. Jacobus and Calvin H. Conron, Jr., for Respondents.

GRIFFIN, J.—This action was instituted by plaintiff and appellant against defendants and respondents under the provisions of 35 Stats. 65, title 45, U.S.C.A. ch. 2, § 51 et seq. (Federal Employers' Liability Act) for claimed injuries occurring to plaintiff while defendant company was engaged in interstate commerce. Damages claimed amounted to $30,500.

Defendants denied generally the allegations of the complaint, and claimed contributory negligence on the part of plaintiff by way of diminution of damages under 35 Stats. 66, title 45, U.S.C.A. ch. 2, § 53. (See *Myers* v. *Southern Pacific Co.*, 14 Cal.App.2d 287 [58 P.2d 387].)

From May to July 14, 1946, plaintiff was engaged by defendant company as a locomotive fireman. On July 14, the day of the accident, he was firing one of three engines pulling a train of 80 freight cars in an easterly direction near Woodford, in Kern County. His engine was "spotted" for water at waterspout number 4. The engineer, according to plaintiff's testimony, set the air brake controlling the entire train and also set the independent hand brake controlling the engine and tender. It was plaintiff's duty to, and on that occasion he climbed upon the tender, reached up, and by means of a hook swung the water-spout around to the manhole and slid the sleeve extension down into it. He then stood upon a platform which was attached to and located on the sleeve extension about 6 or 8 inches above the floor of the tender for the purpose of holding the spout in place. He reached for the valve, pulled it toward him, and turned on the water. After the water had been feeding into the tank for a short time (one or two minutes) the engine started to roll back. Lewy, according to his testimony, lost his balance on the platform, fell toward the front of and across a compound box attached to the upper portion of the tender. While in this position he claims the water spout swung across and struck him with sufficient force to break the box free from its rivets (defendant produced evidence showing that the rivets were not loosened.) The spout broke and fell over the main line. Plaintiff then testified that he returned to the cab of the engine; that the engineer had been down oiling the engine; that he noticed the hand brake was set but that the main air brakes had been released; and that the train had been moved back about two car-lengths before it was brought to a stop. He then testified that both of his legs were badly bruised, his hip and back were numb, his arms bruised and that he had a sprained

elbow and wrist. Plaintiff continued with his duties into Barstow. On July 16, he reported to a company doctor in Bakersfield. He was treated for a period of about two weeks and returned to work as a fireman on a helper engine. He claimed that he was unable to do his regular work due to pain in his left hip. He reported back to the doctor who treated him for about two months. After his release he went back to work as a "hostler." He laid off again because of a claimed pain in his hip. He was also examined and treated in the company hospital in Los Angeles. Thereafter, he resigned from the company and consulted his own doctor and was treated by him up to the time of the trial of this action.

Defendant Langford, the engineer, testified that he set the independent brake but the air brake was kept in running position because the rules of the company required that there must be air in the train while stopped so that in case a car broke off it would not run away; that under these circumstances it would then automatically go into emergency and stop; that he used the "independent air because you don't use the automatic air"; that it would be dangerous to leave the air set throughout the train for any length of time because it would leave the train without any automatic air brakes; and that he had previously made stops in the same manner, at the same place, without any trouble; that he did not know what made the train move on this particular occasion. Other locomotive engineers, familiar with the run, similarly testified as to the custom and rule and also that it was not necessary for plaintiff to stand on the platform, attached to the spout, after the water started running.

Defendant Langford signed a report to the company in reference to the damage to the water spout. He accepted certain demerits for knocking it down but not for any injury to defendant Lewy. He explained that his reasons for accepting these demerits was for the sole purpose of preventing loss of his and other men's time in investigation proceedings. Defendant Langford was dismissed as a party defendant. The jury returned a verdict in favor of defendant company.

Plaintiff now argues on this appeal that the verdict of the jury on the question of the lack of negligence of the company is not warranted by the evidence; that on this question there was no conflict, and no reasonable grounds for a difference of opinion; that the "great current of the evidence" shows that plaintiff did suffer some injury and therefore he should have recovered.

■ From a reading of the record as to the extent and seriousness of plaintiff's claimed injuries, regardless of the merits of the first contention, it appears to us that there is considerable conflict in the evidence in this respect.

Plaintiff furnished X-ray pictures and reports pertaining to his spine and produced medical testimony showing that there was an absence of fusion of the spinous process. However, his doctor indicated that this condition was congenital and that the patient knew of this fact but that it had never bothered him; that it would be reasonable to believe that the injury described by the plaintiff could aggravate the condition; that his findings indicated that plaintiff had the "residual of an acute lumbo-sacral strain" at the junction of the lower lumbar; that plaintiff complained of tenderness over the left iliac lumbar ligament region and pain on straight leg raising; that there appeared in the X-rays evidence of "scoliosis" (curvature) of the spine, probably congenital; that the plaintiff had suffered some sprain to the ligaments or muscles in the area of the lumbo-sacral and should not do heavy lifting. On cross-examination he was asked if he was familiar with the term "railroad spine" and he described it as a "litigation type of injury" where the patient is interested in obtaining reimbursement for a claimed (feigned) injury to the lower back, which condition is difficult medically either to prove or disprove. He then testified, however, that he did not believe plaintiff to be suffering from "railroad spine."

Another doctor testified that plaintiff, in giving his case history, complained of pain in his left pelvis, and back of his left thigh, pain in the left shoulder, neck and back when pulling himself up into the engine cab, pain in his left lower forearm, wrist and fingers, left knee and varicose veins, all of which he claimed he never had before. He then testified that he found tenderness of the left sacroiliac and of the medial portion of the left knee, varicosity of the anterior tibial surface of both legs and a slight hematoma of the left mid-tibia; that he was able to stoop over and draw his knees to his abdomen and that the movements were fairly good, but there was some tenderness in the left latisimus dorsi lateral to the scapula; that his reflexes were normal; that the X-rays showed no evidence of fracture, injury or disease; that bruises would not show up in the X-rays. Up to May 10, 1947, he examined him and found on that date that there was improvement, no pain in the neck, some complaint of tenderness of the left

sacroiliac region and left hip and he believed he had a slight prostatitis.

Defendant, in addition to other evidence, produced medical testimony as to plaintiff's claimed injuries. A conductor on the train, who rode in the cab of the engine after the accident with plaintiff, testified that he noticed plaintiff's activities thereafter; that plaintiff did his work as usual and he saw nothing out of line at any time and that plaintiff said nothing about being hurt; that he was the one to whom plaintiff should have reported any claimed injury but that plaintiff made no such report. Defendant Langford then testified that after the accident happened plaintiff showed him his knees and legs where they had been bruised; that he asked plaintiff if he wanted to make a report of his injury and plaintiff said: "No, let's let it go"; that he did not complain about his back; that plaintiff told him the water spout knocked him down, or "he slipped and fell . . . he didn't know how he got down"; that thereafter plaintiff went about his duties in the ordinary way except his knees were stiff where the skin was broken.

Another engineer testified that he noticed plaintiff and his activities on August 2, 1946, when plaintiff was fireman on his freight train; that plaintiff handled the taking of water and the opening and closing of switches, and during the whole trip he did not notice anything unusual with respect to his activities or conduct and plaintiff made no complaints, to his memory, about his leg or hip.

A claim adjuster saw plaintiff a few days after the injury. According to his testimony plaintiff said he fell on top of the water tank and skinned his knees and legs; that he examined them and saw superficial skin abrasions; that plaintiff stated that was the only injury he had; that he asked for leave of absence for a few days with pay; that the request was granted.

Medical testimony, produced by defendant company, showed that plaintiff was examined by its doctors; they testified that plaintiff complained of a low back injury; that as a result of the examination, as to the upper extremities, there was found "nothing unusual or abnormal about them"; that as to his back no muscle spasm nor localized tenderness was found; that the X-rays showed a normal spine, including lumbar vertebrae and lumbo-sacral and sacroiliac joints; that they disclosed no indication that any of the joints in the lower back had been injured; that plaintiff requested yard service work which request was granted; that as a result of his ex-

amination he was "unable to find anything definitely wrong with plaintiff's back"; and that he didn't think plaintiff had "*any disability, organically or functional.*" One doctor testified that plaintiff made no complaint about pain in the back but did complain about his knees; that X-ray pictures of both knees were taken and they disclosed neither fracture nor dislocation; that he found what he described as a "plexus of small blood vessels in his leg" which he stated could not have been the result of any claimed injury; that he felt that plaintiff was fully able to return to work by August 2, 1946; that on one visit or possibly two, he saw plaintiff carrying a small child in his arms; that this would indicate to him that plaintiff had no serious back trouble or lumbo-sacral trouble as this could not be done in comfort if such trouble existed. Exhibits in evidence show that plaintiff, in requesting a leave of absence from work from July 15, 1946, to August 1, 1946, on a form provided by the company, stated as a reason for such leave "multiple contusions . . . a small abrasion of the left knee, abrasion over the right tibial tubercle." No suggestion was therein made as to any back injury. Plaintiff applied for a leave of absence from October 16, 1946, to December 3, 1946 (but did not use it). He stated in the application as the reason therefor: "Taking care of sick wife." No mention is made of his claimed injuries.

From an examination of the entire evidence the jury might well have believed that plaintiff exaggerated the extent of and suffered no substantial or permanent injury due to any claimed negligence of the defendants. In support of the verdict and judgment we must accept this implied finding. Where there is a conflict in the evidence and the evidence relied upon is of a substantial character, the judgment will not be disturbed on appeal. (*Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220].)

Judgment affirmed.

Barnard, P. J., and Mussell, J. pro tem., concurred.