[Civ. No. 10573. First Appellate District, Division One.—October 7, 1938.]

C. W. HOSMAN, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

A. B. Dunne and Dunne & Dunne for Appellant.

Clifton Hildebrand and Goodman & Brownstone for Respondent.

TUTTLE, J., *pro tem.*—Plaintiff, at a jury trial, recovered judgment against defendant railroad company in the sum of $20,000 for personal injuries. The action is based on the

Federal Employers' Liability Act (45 U. S. C. A. 51) and the Federal Safety Appliance Act (45 U. S. C. A. 11).

In its "statement of issues", appellant presents the following questions arising on this appeal: (1) Whether the evidence was sufficient to support any verdict for plaintiff. (2) Whether, in view of the evidence, there was reversible error in respect of instructions given and refused. (3) Whether the verdict was not excessive and unsupported by the evidence. (4) Whether the action was barred as to the state courts by the state statute of limitations.

Taking up the question of the sufficiency of the evidence, it becomes necessary to first determine the power and duty of this court in a case of this character. Are we to be guided by the law and the decisions of the courts of California, or shall those of the federal jurisdiction apply? The foregoing inquiry seems to have been definitely answered by the Supreme Court of the United States in the case of *Chicago, M. & St. P. R. Co.* v. *Coogan,* 271 U. S. 472 [46 Sup. Ct. 564, 70 L. Ed. 1041], where the rule is thus stated: "By the Federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. (Citing cases.) The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several states. This court will examine the record, and if it is found that as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed. (Citing cases.)"·

An examination of the cases bearing on the federal rules for determining the sufficiency of the evidence on appeal indicates that they are fundamentally in harmony with those in our own jurisdiction. The general rule in our federal courts is fully stated in the case of *Gunning* v. *Cooley,* 281 U. S. 90 [50 Sup. Ct. 231, 74 L. Ed. 720], a case cited by appellants, in the following quotation: "A mere scintilla of evidence is not enough to require the submission of an issue

to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed'. (*Schuylkill & D. Improv. & R. Co.* v. *Munson,* 14 Wall. 442, 448 [20 L. Ed. 867, 872] ; *Pleasants* v. *Fant,* 22 Wall. 116, 122 [22 L. Ed. 780, 783].) Issues that depend on the credibility of witnesses, and the effect or weight of evidence are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. (*Texas & P. R. Co.* v. *Cox,* 145 U. S. 593, 606 [12 Sup. Ct. 905, 36 L. Ed. 829, 833] ; *Gardner* v. *Michigan C. R. Co.,* 150 U. S. 349, 360 [14 Sup. Ct. 140, 37 L. Ed. 1107, 1110] ; *Baltimore & O. R. Co.* v. *Groeger,* 266 U. S. 521, 524, 527 [45 Sup. Ct. 169, 69 L. Ed. 419, 422, 423].) Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. (*Richmond & D. R. Co.* v. *Powers,* 149 U. S. 43, 45 [13 Sup. Ct. 748, 37 L. Ed. 642, 643; 7 Am. Neg. Cas. 369].) Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury. (*People's Sav. Bank* v. *Bates,* 120 U. S. 556, 562 [7 Sup. Ct. 679, 30 L. Ed. 754, 756] ; *Southern P. Co.* v. *Pool,* 160 U. S. 438, 440 [16 Sup. Ct. 338, 40 L. Ed. 485, 486].) 'When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also with one that he is, his proof tends to establish neither.' (*Ewing* v. *Goode* [by Taft, Circuit Judge], (C. C.) 78 Fed. 442, 444. See *Patton* v. *Texas & P. R. Co.,* 179 U. S. 658, 663 [21 Sup. Ct. 275, 45 L. Ed. 361, 364] ; *New York C. R. Co.* v. *Ambrose,* 280 U. S. 486 [50 Sup. Ct. 198, 74 L. Ed. 562].) ''

▋ Appellant's attack would seem to be based, not so much upon an absence of proof on the part of respondent,

as upon the premise that such proof was so obviously false or so inherently improbable as to require its rejection by this court. It seeks to bring the case within the federal rule that where the evidence is so overwhelmingly in favor of appellant as to leave no room for doubt as to the facts, the judgment must be reversed. (*Gunning* v. *Cooley, supra.*) This requires a consideration of the entire record.

 Appellant thus states the question which arises in connection with the sufficiency of the evidence: ''Upon this record the issue is still more precise; Was the brake chain so long that its length constituted a defect?'' In other words, was the car equipped with an ''efficient'' brake within the meaning of the act mentioned above? The evidence here shows the following essential details: Respondent at the time of the accident had been employed by railroad companies as brakeman, extra conductor and switchman since 1904, beginning his work with appellant in 1911, and working for the appellant intermittently between 1911 and 1926 and continuously thereafter until the date of his injury. At the time of the accident he was fifty-two years old and in good health. On the day of the accident, respondent was a member of a switching crew engaged in making up an interstate train in appellant's yard at Eugene, Oregon. Pursuant to his duties, respondent was riding on top of two cars, which were in process of being ''dropped'' or ''kicked'' by a switching engine down the track on which the accident occurred. It was respondent's job to set handbrakes on these two cars, so that other cars could be switched up against them, and the train made up. Respondent attempted to set the handbrake on the east end of the lead car of the two cars, as the cars were traveling easterly. The brake on the lead car failed entirely to work and respondent could not stop the cars. Respondent then proceeded over the tops of the cars to the brake on the west or back end of the hind car. Respondent descended to the brake platform on this hind car, took hold of the brake wheel and began to take up the slack in the brake, by turning the wheel in a clockwise direction, pulling it toward him with his right hand and shoving it away from him with his left hand. After the slack was thus taken up, respondent continued the same motion to set the brake, and thus bring the cars to a stop. He obtained no results therefrom, and kept on tightening the brake in this manner, changing the position of

his hands to get a new hold on the brake wheel, each time he gave it a twist or turn. He finally gave one last pull on the wheel, and as he did so, he heard the brake chain click or snap and simultaneously the brake wheel came loose in his hands with a sudden jerk in the direction he was turning it. By the sudden jerk, he was thrown backwards off the platform and landed on his back on the rails, his face in the direction the cars were moving away from him. The fall of respondent did not produce unconsciousness. As respondent lay on his back, on the rails, with his face in the direction in which the cars were moving away from him and at about the level of the brake chain, he looked at the brake chain and saw that it was not broken, as he had thought, but that it was wrapped around the brake staff three times, and that there was some slack in the portion of the chain leading back from the brake staff to the pulley at the end of the handbrake rod.

The handbrake on freight cars is operated by a wheel on the brake platform of the car. This wheel is attached to a perpendicular shaft, to which is attached (on the floor of such platform) a ratchet wheel, and below the platform and under the car there is a drum two inches in diameter. To this drum is attached a chain. As the wheel above is turned, the chain winds around the drum, and this draws up the brake rod and applies pressure on the brake shoes. The brake is "set" or held under tension after applying the same by a pawl (or dog) which engages the ratchet wheel at one end which is shaped for that purpose. The other end of the pawl is rounded. The person applying the brake uses the pressure of his foot to keep the pawl in a position where it will enter the ratchet while it is being turned, and thus prevent the wheel from suddenly revolving in a direction opposite to that in which it is being turned. It was, according to respondent's testimony, the sudden release of this wheel on which he had his hands which caused his injury, by throwing him from the top of the car to the ground. What caused the sudden spinning of the wheel is practically the only question arising in connection with the liability of appellant. It may be pointed out that the car in question had been in use since the year 1913.

Respondent testified that when he applied the brake in the usual manner it did not stop the car; that when he gave a last pull he heard something snap and the brake chain clicked

and "went broke" and he fell off the car. While lying on the ground he saw that the chain was not broken "but it wrapped around that staff three times . . . there was a little slack in that part". Referring to the chain, he said: "Well, if you only give one turn, or possibly one and a half turns, there is not much danger of it fouling; but if you have more than one wrap, or one and a half wraps, then it wraps over itself, and then she is liable to give way with you any time . . . the chain works over itself; and when it gets over itself like that, she will slip off (indicating)." Respondent further testified that he set the brake in the usual way as he had done on previous occasions; that the brake chain fouled and let loose, throwing him from the top of the car to the ground; that the only way to stop the fouling of the chain is to have a short chain that won't wrap more than once. Witness Saylor, for respondent, testified that he examined the brake on the car immediately after the accident and that the chain was wrapped two or three times around the staff. He stated that the more laps around the brake staff "causes it to bunch up and it will get foul". Witness Jackson, for appellant, testified that if the chain is too long it may slip off and cause the brake wheel to release and that this is a recognized defect. Witnesses McDonald and Estes, for appellant, testified to the same effect.

Appellant's attack upon the sufficiency of the evidence is along two general lines: First, that the cross-examination of respondent demonstrates conclusively that the cause of the injury was not an inefficient brake, but the act of respondent in failing to properly operate the brake; second, that the testimony of its own witnesses is so conclusively and overwhelmingly to the effect that the brake was efficient, that evidence to the contrary must be rejected by this court.

Taking up the first contention just mentioned, by extended reference to the testimony of respondent, appellant argues that the jury could only infer that the accident was caused by the act of respondent in accidentally disengaging the pawl. It is contended that a diagram drawn by respondent shows that it was impossible, by reason of the position of his foot, for the latter to have properly operated the brake, and that the only possible inference to be drawn from respondent's testimony was that he suddenly and accidentally kicked the pawl away from the ratchet wheel, where it was engaged, in

the process of putting on the brakes, with the result that the wheel suddenly spun around and threw respondent to the ground. On his direct examination respondent testified that he applied the brake in the usual manner at the time and that the usual manner of operating the brake is to place your foot against the pawl and it goes into the ratchet, which holds the brake as it is tightened. The details as to how the pawl was engaged more fully appear in the cross-examination, which it is contended so clearly demonstrates the falsity of the testimony on direct examination that the jury should have disregarded the direct examination entirely. A diagram was drawn by respondent on his cross-examination, indicating the position of his foot as it engaged the pawl. From this evidence appellant argues that it *conclusively appears* that respondent could not possibly have set the brake in a proper manner as the latter testified in his examination in chief. We cannot say that the *only reasonable* inference to be drawn from such testimony would lead to the conclusion that the accident was thus caused. The jury believed respondent when he testified that he set the brake in the usual manner. That was their right. They did not conclude that the accident was due to the act of respondent in kicking out the pawl. That was their privilege. This is true under both federal and state jurisdictions, as we have already pointed out. The jury having impliedly found, upon substantial evidence, that the accident was not caused by the act of plaintiff, as detailed above, any attempt to set aside such finding would be a plain usurpation of a function exclusively committed to them under the laws of both jurisdictions. It may be, as earnestly contended by appellant, that on the issues it discusses the evidence preponderates strongly in its favor, but such a condition presents no ground for reversal after a trial court or jury has concluded otherwise and upon substantial evidence. The fact that the evidence appearing in the testimony in chief may be opposed by that given by the same party in his cross-examination, does not vitiate all of such evidence. The jury was at liberty to adopt and believe either explanation, and having done so its finding must be upheld on appeal, and the evidence upon which such a finding is based is ''substantial evidence'' under the familiar rule stated above.

In respect to the second contention, to the effect that the testimony of appellant's witnesses shows conclusively that

the evidence produced by respondent is absolutely unworthy of credence, a *résumé* is given of the testimony of each of appellant's witnesses, who were all in its employ. Several told of examining the car and brake immediately after the accident, and they said that the brake in all respects was in good working order. Witness Cook, for appellant, testified that he was a car designer. He told of the construction of the brake and all its parts, and gave the minimum number of turns necessary to set the brake and also the maximum number. In an ingenious and very plausible manner and with elaborate detail appellant proceeds to mathematically demonstrate that the testimony of respondent bearing on the excessive length of the brake chain *must* be false. The testimony of respondent to the effect that while on the ground where he was thrown, he glanced under the car and saw the brake chain wound around the drum three times, is characterized by appellant as "bold faced swearing", when compared to his prior statements and the physical facts. If we were sitting as a jury such argument would be proper and perhaps persuasive. At the trial the jury evidently believed the account given by plaintiff, and we are not permitted to substitute our own judgment for theirs, under either federal or state jurisdictions. This rule is so well established that no citation of authorities is necessary. We do not find that the testimony of respondent is so inherently improbable or obviously false as to require its rejection by this court. The position taken by appellant in respect to these facts is fully answered by the following language from the case of *Detroit T. & I. R. Co.* v. *Hahn,* 47 Fed. (2d) 59: "It is insisted for appellant that the case is governed by *Chicago, M. & St. P. Ry. Co.* v. *Coogan,* 271 U. S. 472 [46 Sup. Ct. 564, 70 L. Ed. 1041], since all the inferences which the jury might reasonably draw from the evidence would not be sufficient to support a finding of a cause of injury other than the negligence of the appellee in failing to apply the brake. We do not think the evidence falls within this rule, nor do we think it leaves the cause of injury in the realm of conjecture, as was the case in *Northern Ry. Co.* v. *Page,* 274 U. S. 65 [47 Sup. Ct. 491, 71 L. Ed. 929], and *Burnett* v. *Pennsylvania R. Co.,* 33 Fed. (2d) 579 [6 C. C. A.]. If there was an inefficient brake which caused the injury, there is inescapable liability under the Safety Appliance Act, (45 U. S. C. A., sec.

1 et seq.). The appellant introduced evidence which would have supported a finding for it on that issue, that is, evidence that the brake was examined before and immediately after the accident and found to be in good working order. We are asked to accept that evidence as conclusive. This we cannot do, for the evidence of appellee that the brake was used in the normal and usual manner and failed to work was such evidence of inefficiency as to make an issue for the jury. (*Didinger* v. *Pennsylvania R. Co.*, (C. C. A.), 39 Fed. (2d) 798.)''

In addition to actual proof in the record of the inefficiency of the brake arising out of the lengthened chain, there is also proof that the brakes when properly applied did not have the effect of stopping the car. Under federal decisions involving the act in question, it has been held that proof of the foregoing facts makes out a case of inefficient brakes. ''Assuming the proper setting of the brake, the fact that it did not hold demonstrates its inefficiency.'' (*Didinger* v. *Pennsylvania R. R. Co.*, 39 Fed. (2d) 798, 799.) ''The test of the observance of this duty (under the Safety Appliance Act) is the performance of the appliances.'' (*Philadelphia & R. Ry. Co.* v. *Auchenbach,* 16 Fed. (2d) 550, 552 (C. C. A. 3).) ''The obligation was absolute and mandatory upon the plaintiff in error to comply with the requirements of this act, both in equipping and maintaining with efficient handbrakes.'' (*Lehigh Valley R. Co.* v. *Howell,* 6 Fed. (2d) 784, citing numerous cases.)

The case chiefly relied upon by appellant is *Grand Trunk Western R. Co.* v. *Holstein,* 67 Fed. (2d) 780 (C. C. A. 6). The factual structure of that case is very similar and a recovery was denied. In that case there was *no evidence of the failure of the brakes to function properly* nor was there any evidence of any *structural defect* in the brakes. The court expressly holds that absence of proof that the brakes failed to function distinguished the case from the Didinger case (cited above). It states it fails to apply the rule in the Didinger case to a case ''where the cause of the sudden spinning of the brake was left wholly to conjecture, and where the proofs of injury, though consistent with the existence of some defect, were at least equally consistent with some other theory of causation''. In the Holstein case there was no inference of physical defect to be drawn from an

abnormal action of the brakes under normal operating conditions. Here the brakes were normally applied but *failed to take effect*. The true test of the efficiency of the brake was its ability to produce expected results when properly applied.

It is contended that this case is subject to the federal rule that "where proven facts give equal support to each of two inconsistent inferences . . . neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other. . . . " (*Pennsylvania R. Co.* v. *Chamberlain*, 288 U. S. 333 [53 Sup. Ct. 391, 77 L. Ed. 819].) The decision was there reversed because there was no substantial proof of negligence. In the instant case we have held that there *is* such proof. There are no conflicting inferences here involved, *neither of which has been established*. There is present the ordinary conflict in the evidence. The jury may have adopted appellant's theory that the pawl was accidentally disengaged, or it may have concluded (as it obviously did) that the overlapping chain caused the accident. As we have pointed out, in the case last cited *neither inference* was established, and consequently no negligence was proven.

█ It is contended that a statement made by respondent prior to the action was in many respects conflicting with and contradictory to his testimony given at the trial. Conceding that there were such discrepancies, the matter of the credibility of a witness is solely one for the jury. As was held in *Williams* v. *General Ins. Co.*, 8 Cal. (2d) 1 [63 Pac. (2d) 289], a conflict between testimony of a witness and his prior statements presents a question of fact for the jury, and it is not the province of an appellate tribunal to interfere therewith. The credibility of a witness and any inconsistency in his testimony is for the sole determination of the jury. (*Van DerHoof* v. *Chambon*, 121 Cal. App. 118 [8 Pac. (2d) 925].) Much of what appellant has to say upon this phase of the case might properly be urged before the jury, rather than this court.

Concluding the discussion of the evidence and after an examination of the entire record, we hold there is sufficient evidence to establish the fact that the brake in question was defective, under the acts of congress mentioned. To hold

otherwise we would ourselves exercise the functions of triers of fact, when under the federal law such questions are committed to the determination of the jury. (*Davidson Steamship Co.* v. *United States,* 205 U. S. 187, 192 [27 Sup. Ct. 480, 51 L. Ed. 764].)

The verdict was in the sum of $20,000. Appellant claims this amount is excessive. The familiar rule on the duty and power of an appellate court under such circumstances is thus stated in *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513] : ''It is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, that the judge is at liberty to interpose his judgment as against that of the jury.'' Turning to the facts, the following is a summary of Dr. Ruedy's testimony: Respondent suffered crushed fractures of the fourth, fifth, sixth and seventh dorsal vertebrae; the width of the crushed vertebrae was reduced approximately a quarter of an inch; the crushing of the vertebrae, which pressed on the spinal cord, affected the nerve centers or ganglia, producing reflex symptoms resulting in the stomach condition, complained of constantly by respondent. Callus, as a result of the fractures, was thrown around the crushed vertebrae in an excess amount, which in turn pressed upon the spinal cord and ganglia and nerve centers. Dr. Ruedy testified concerning a fracture of the acetabulum, the socket which fits the right hip joint; the injury showed a mottled, and cobblestone-like effect, causing the head of the bone to rotate on a rough surface with constant irritation and the inflammation thereby set up affected the sciatic nerve, which passes over the injured area. These injuries, Dr. Ruedy stated, were permanent in character; neither therapeutic nor surgical measures would provide any relief. The doctor further stated that respondent could not do any manual labor and that if he attempted to do such work, the inflammation would spread and the symptoms become exaggerated and that the condition of respondent would become progressively worse because of the continued irritation of the injured parts. He testified that the injury to the hip joint and bone was permanent and would not improve but in fact would get worse, because

the constant irritation would produce further callus and consequent inflammation of the sciatic nerve.

Respondent was fifty-two years of age at the time of the accident and his life expectancy was nineteen and one-half years. In 1927 he earned $2,151.30; in 1929, $1803.51; and in 1930, $1603.66. Thereafter, due to the "depression", his earnings dropped considerably, and only averaged about $80 a month for an eight-year period preceding the accident. His steady working wage was $6.62 a day. ▉ Appellant contends that his future earnings must be predicated upon what he *actually* earned preceding the accident. The rule is otherwise. "The rule is that, although one may not work every day, nor all the time, damages may be estimated upon *one's ability to earn money*, rather than upon what one is either earning or has actually theretofore earned." (*Holmes* v. *California Crushed Fruit Co.*, 69 Cal. App. 779, 780 [232 Pac. 178], citing numerous cases.) (Italics ours.) Assuming that he would have earned $135 a month for nineteen and a half years, the present value of such earnings, at 3 per cent, is $22,400. It must be remembered also that other elements of damage, such as pain and suffering to be endured in the future, as well as that already suffered, may have entered into the verdict. It cannot be assumed that the jury based their conclusion *solely* upon loss of future earning power. After a careful review of the evidence bearing on this question, we are unable to conclude that the verdict was based on passion and prejudice, rather than upon a dispassionate consideration of the evidence. It is supported by substantial evidence in respect to damages, and our inquiry ends there.

▉ The rejection by the trial court of several instructions is the subject of complaint. These instructions are not quoted, nor are any authorities cited except in respect to one. The latter was to the effect that the presumption of due care existed only in the absence of proof of the facts, and that where the actual facts and circumstances were shown, there was no presumption that the plaintiff used due care. In the first place, the jury was *not instructed* to the effect that there was a presumption that respondent used due care. There was no reason to meet an issue of law which was not before the jury. There could be no prejudice in rejecting the instruction under such circumstances. The

jury was instructed fairly and fully upon the law, and we find no prejudicial error in respect to the giving or refusing of any instruction.

█ Finally, appellant contends that the federal statute of limitations of two years is not applicable, and that the one-year statute of this state governs this character of action. Thus we have appellant invoking the state law here, and rejecting it on the law of evidence. This is natural in a class of cases where the right to sue arises in one jurisdiction and the enforcement of the right takes place in another. This action was commenced more than one year after the accident, and section 340, subdivision 3 of the Code of Civil Procedure is set up as a bar. The federal act provides for a two-year limitation. The question is whether or not, if a state provides a *shorter* period, it would be effective. No authority cited by appellant bears out its contention. It was held in *Engel* v. *Davenport*, 271 U. S. 33 [46 Sup. Ct. 410, 70 L. Ed. 813], that the provision in the Employers' Liability Act relating to the time when an action under the act may be commenced, affected a substantive right and must prevail over the limitations of a state.

We find no prejudicial error in the record, and the judgment is therefore affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1938.