[Civ. No. 15629.   First Dist., Div. Two.   Mar 3, 1954.]

ROBERT   C.   LEBKICHER,   Respondent,   v.   WILLIAM CROSBY, as Administrator, etc. et al., Appellants.

L. B. DeMatteis, District Attorney (San Mateo), Louise Eleanor Falvey, Deputy District Attorney, and Hoffman & Nagle for Appellants.

Cosgriff, Carr, McClellan & Ingersoll and Robert R. Thompson for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of San Mateo County in a personal injury action in the sum of $5,500 and costs of $242.20 in favor of plaintiff Robert C. Lebkicher and against the administrator of the estate of Theola Louise Aitken, the deceased driver of the car involved in the accident, and Thomas Aitken, Jr., her husband.

The accident in which plaintiff was injured occurred on January 12, 1949, and the original complaint was filed on January 4, 1950. Theola Louise Aitken had died on November 4, 1949, hence a supplemental complaint was filed August 17, 1950, reciting that William Crosby had upon plaintiff's motion been substituted as defendant and that on July 27, 1950, plaintiff had presented his claim for damages against the administrator of said estate. On March 13, 1952, an amended complaint alleging additional injury and medical expense was filed.

Robert C. Lebkicher, plaintiff and respondent, an employee of Pan American Airways, South San Francisco, left work at 4:15 p. m. on January 12, 1949, and began walking from the easterly terminus of Coast Guard Road toward Old Bayshore Highway. Coast Guard Road, also referred to in the record as Pan American Road, runs from the Pan American Airways buildings at its eastern terminus to Old Bayshore Highway. The westerly portion of the road has an over-all width of about 30 feet, but as the road approaches the easterly terminus it widens to about 65 feet excluding shoulders where it is divided by concrete divider strips. The southerly lane becomes in this area much wider than the northerly, having a width of about 40 feet. There are no pedestrian sidewalks along this road nor any marked crosswalks. It was a straight flat road with no obstruction. A person could stand at the eastern terminus and view the entire road to Old Bayshore Highway.

Approximately 700 to 800 other employees of Pan American were leaving work at the same time as was respondent, and between 300 and 400 automobiles were leaving the grounds by way of Coast Guard Road, the only available exit. The traffic headed westward was bumper to bumper, but the incoming traffic was very light. Several persons were proceeding on foot along the Coast Guard Road westward toward old Bayshore Highway.

Respondent testified that he was approximately 300 feet west of the point where he entered the road when he was

called to by someone in an outgoing car. He started diagonally across the road. Prior to starting across the road he had been looking west, facing oncoming traffic. Respondent thought that the nearest incoming car was not near enough nor traveling at a speed great enough to constitute a danger to him. As he began to cross respondent looked back over his right shoulder at the traffic coming out of Pan American. He then noticed the Aitken car approaching in the south lane at a distance of about 65 feet or almost four car lengths from him. It was just passing the slight jog in the south lane, which on the map appears to be the point where the Coast Guard Road begins to widen. Respondent had taken from three to five steps and had just reached the edge of the heavily traveled portion of the widest section of the south lane. He testified that his first reaction was to get out of the way, and thought of the traffic hump (evidently the concrete dividers between the north and south lanes) as a possible escape but saw that they were too far away. So he stayed where he was and put his hands on his hips to indicate that he was going to stay where he was. Respondent was struck by the Aitken automobile about a foot in from the right edge of the bumper, and was thrown to the pavement, sustaining a broken leg and other injuries. If the accident occurred at the point on Coast Guard Road where respondent contends that it did, the driver had approximately an area 25 feet in width between respondent and the concrete dividers in which she could have safely passed by swerving to the left. The driver's speed was estimated by respondent's witnesses at from 25 to 40 miles per hour. The driver did not blow her horn, swerve her car, nor decrease her speed.

There is considerable conflict in the testimony. Officer Stagnero, the police officer who arrived at the scene shortly after the accident, placed the scene of the accident at a point much farther west, on the narrow portion of Coast Guard Road where it consists of two 10-foot lanes. There were no concrete dividers in this section of the road. The officer's report contained the information that the driver stated that the pedestrian darted in front of her without looking, and that respondent said that he started to cross and saw other cars coming, and as he did this he walked into the right front fender of the Aitken car. He told the officer it was not the driver's fault. The officer testified that there were no speed restriction signs posted between Old Bayshore and the point where the accident occurred.

Appellant contends that the finding of negligence on the part of Mrs. Aitken is not supported by the evidence. This argument is based on appellant's version of the facts, that respondent stepped directly in front of the Aitken car, creating a situation of imminent peril in which the driver could not be expected to act with the degree of care required had there been time to deliberate. However, respondent's version is that the Aitken car was between 25 and 65 feet when he stopped, placing his hands on his hips. While the officer places the accident on the narrow portion of the road where the driver most probably could not have swerved any appreciable distance, respondent and his witnesses Lynehan and Brain place it on the widest portion of the road. There was testimony that several other persons were walking along the edge of Coast Guard Road, some ahead of respondent, hence the driver should have been alert to the presence of pedestrians. She should have also been able to note that there were no crosswalks. Her view was unobstructed. The evidence was that the driver did not decrease her speed. Section 510 Vehicle Code, the basic speed law, provides that no person shall drive upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on the surface and width of the highway, and in any event at a speed which endangers the safety of persons or property. ▮ Whether or not the driver's speed was reasonable in view of the circumstances herein was a fact question to be determined by the jury (*Geisler* v. *Rugh,* 19 Cal.App.2d 738, 741 [66 P.2d 671]) ; a driver is bound to be reasonably vigilant for pedestrians on the highway (*Rush* v. *Lagomarsino,* 196 Cal. 308 [237 P. 1066] ; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 P. 125].) ▮ The driver's vigilance should increase with evidence of increasing numbers of pedestrians and motor vehicles in the area. (*Washam* v. *Peerless Automatic etc. Co.,* 45 Cal.App.2d 174, 179 [113 P.2d 724].)

Appellant contends that respondent was negligent as a matter of law, since respondent did not cross the road at a crosswalk and did not yield the right of way to the driver of the car. Section 562, Vehicle Code, provides that every pedestrian crossing a roadway at any point other than in a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. The section further provides that "the provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any

pedestrian upon a roadway." ■ Appellant cites *Rios* v. *Bennett,* 88 Cal.App.2d 919 [200 P.2d 73], to the effect that there is a continuing duty of care upon a pedestrian crossing a street between crosswalks or diagonally. That is true and that case states that a pedestrian crossing in such manner may have to exercise even a higher degree of care than at a regular crosswalk, "but," the opinion continues, "the question as to whether or not such care was exercised in a given case is one for the jury, unless he is so careless that it can be said he is negligent as a matter of law," citing *Watkins* v. *Nutting,* 17 Cal.2d 490, 495 [110 P.2d 384]; *Brannock* v. *Bromley,* 30 Cal.App.2d 516, 524 [86 P.2d 1062]; *Foti* v. *Morrissey,* 57 Cal. App.2d 328 [134 P.2d 51], cases also cited by appellant herein. In the Watkins case a verdict for damages for the death of a pedestrian was affirmed. It was contended that the pedestrian was guilty of negligence as a matter of law. The pedestrian walked from behind an automobile into the center lane of the highway where he was struck by defendant's truck. It was held that whether or not the pedestrian was guilty of contributory negligence was a question of fact where there was evidence that the pedestrian looked, but either did not see the truck or saw it and misjudged either its speed or distance. *Brannock* v. *Bromley, supra,* affirmed a verdict for defendant. In that case the jury brought in a verdict finding both plaintiffs and defendants guilty of negligence, so plaintiff clearly was not held guilty of negligence as a matter of law. In *Foti* v. *Morrissey, supra,* the question as to whether the pedestrian was guilty of contributory negligence was submitted to the jury, and the court in the opinion states that "the implied finding that deceased was guilty of contributory negligence which proximately contributed to his injury is not without support in inferences reasonably to be drawn from the evidence and is therefore conclusive upon this court." ■ The rule is stated in *Sanker* v. *Humborg,* 48 Cal.App.2d 203, 204 [119 P.2d 431], that when a pedestrian looks before placing himself in a position where he may be in peril and fails to see an approaching vehicle, or seeing it, misjudges its distance or speed and proceeds on his way again without looking, the question of his negligence is generally one of fact, but where he does not look at all or where he looks from a position where he cannot see and takes no precaution for his own safety, the question of negligence is generally one of law for the court. In the case at bar there is testimony that respondent

looked at incoming traffic from a position where he could see. He may have misjudged its distance from him or its speed, but whether or not he was negligent in attempting to cross the road under the circumstances herein would appear to be a fact question.

Appellants contend that the accident occurred prior to the effective date of section 956 of the Civil Code providing for the survival of actions for personal injury. The statute became effective October 1, 1949. Mrs. Aitken died on November 4, 1949. The action was commenced in January, 1950. Appellants say that the purpose of the statute was to create a new cause of action and that the accident is the controlling date, citing *Cort* v. *Steen*, 36 Cal.2d 437 [224 P.2d 723]. However, in *Smith* v. *Finley*, 112 Cal.App.2d 599, 600 [246 P.2d 989], it is pointed out that in *Cort* v. *Steen* the action against the administrator of the deceased tort feasor was commenced prior to the effective date of the section. The court in *Smith* v. *Finley* held that the language of *Cort* v. *Steen* was subject to the interpretation that if section 956 was in effect at the date of the tort feasor's death, then the cause of action survived, even though the section was not in effect at the date of the accident.

It is also argued that it was error to instruct on the doctrine of last clear chance. The driver must have not only the last chance, but the last *clear* chance to avoid the accident by the exercise of *ordinary* care. (*Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932].) Five elements must be present to make the doctrine applicable (1) plaintiff's negligence placing him in a position of danger from which he cannot escape by the exercise of ordinary care; (2) defendant's knowledge that plaintiff is in such a situation; (3) defendant knows or in the exercise of ordinary care should know that plaintiff cannot escape; (4) defendant has a chance to avoid the accident by use of ordinary care; (5) defendant fails to use ordinary care to avoid the accident. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915].) Appellant argues that there is no testimony nor evidence of any kind to justify an inference that Mrs. Aitken was aware of respondent's peril, and that respondent negatived such an inference by testifying that he did not see the car swerve, slow down nor was the horn sounded. California supports the doctrine of discovered peril. (*Starck* v. *Pacific Elec. R. Co.*, 172 Cal. 277 [156 P. 51, L.R.A. 1916E 58]; *Lasch* v. *Edgar*,

46 Cal.App.2d 726 [116 P.2d 949].) Construing the evidence in the light most favorable to respondent appellants say that assuming a speed of 40 miles per hour at a distance of 65 feet, —the distance respondent states he was from the Aitken car when he stopped on the road—the driver did not have a clear chance to avoid the accident, since the vehicle would be traveling at about 60 feet per second, and reaction time must also be added. Section 670 of the Vehicle Code prescribes a stopping distance of 148 feet at 40 miles per hour. (See *Buck* v. *Hill*, 121 Cal.App.2d 352, 357 [263 P.2d 643].) Although respondent's testimony as to where he first saw the Aitken automobile appears to be somewhat confused and contradictory, it is subject to the interpretation that it was the jog where the pavement begins to widen, a distance of about 200 feet from him when calculated on the map in relation to the spot from which he began to cross the road, that he started crossing when the Aitken car was 200 feet away, and stopped after a few diagonal steps when it was 65 feet away, in order to let it pass by him. If respondent started across when the driver was 200 feet away, then at 40 miles per hour there was more than the minimum distance of 148 feet in which to stop if the driver observed respondent's peril.

But, as pointed out by respondent, ordinary care is not limited to stopping. Here the accident could have been avoided by swerving slightly to avoid the pedestrian. (See *Center* v. *Yellow Cab Co.*, 216 Cal. 205, 208 [13 P.2d 918].)

Respondent cites *Selinsky* v. *Olsen*, 38 Cal.2d 102 [237 P.2d 645], to the effect that it is for the jury to determine whether in the space of time involved the driver could have avoided the collision. In *Bailey* v. *Wilson*, 16 Cal.App.2d 645, 649 [61 P.2d 68], it was said that where the victim was in the path of the vehicle and plainly visible to the driver, the jury may conclude that the driver "must have seen" him, and may therefore be instructed on the doctrine of last clear chance even though there is no direct evidence that defendant actually knew of the victim's presence in the roadway, and even though he may have testified that he did not see the victim in time to avoid hitting him.

Appellants acknowledge that they are familiar with the rule of *Bailey* v. *Wilson, supra,* that in cases where the victim is in the path of the approaching automobile it is proper to instruct on last clear chance. They say that although the jury may infer that appellant was aware of respondent's position, it is not proper to instruct them that they may

make such inference. This reasoning is difficult to follow. They cite *Haerdter* v. *Johnson*, 92 Cal.App.2d 547, 551 [207 P.2d 855] to the effect that the line of cases represented by the Bailey case, *supra*, does not hold that defendant is liable because he *ought* to have known of plaintiff's danger, or because circumstances put him on notice of the danger, or that he was remiss in failing to discover the danger, but rather that "under all the facts and circumstances shown by the evidence it was proper to find that the defendant, despite his denial of knowledge, or despite the absence of direct testimony on the subject, was actually aware of the plaintiff's danger in time to avert it." The portion of the instruction on last clear chance that appellants take particular exception to here is "Third, That Theola Louise Aitken, deceased, had *or from all the facts you find she must have had*, actual knowledge of plaintiff's perilous situation" does not tell the jury that they may apply the doctrine upon a finding that the driver "ought to have known" of respondent's position of danger.

When the jury should be instructed on the doctrine of last clear chance and when it should not must be determined in view of the recent Supreme Court decisions, *Peterson* v. *Burkhalter* (1951), 38 Cal.2d 107 [237 P.2d 977], and *Rodabaugh* v. *Tekus* (1952), 39 Cal.2d 290 [246 P.2d 663]. The Peterson case has not been overruled by the Rodabaugh case, as has been pointed out in the latter case's concurring opinion. In the Rodabaugh case a judgment notwithstanding verdict for plaintiffs was affirmed where defendant testified that he observed deceased's car for 500 feet approaching the intersection, that when decedent was 75 to 100 feet from the intersection and defendant saw that he was not slowing down, he applied his brakes gently, thinking decedent would probably stop for the boulevard stop sign, that he observed decedent looking straight ahead and that he did not slacken his speed, that defendant then applied his brakes harder at about 75 feet from the intersection and at 35 feet therefrom slammed them down harder. It was held that there was no substantial evidence that defendant had a *last clear* chance to avoid the accident, that there must be more shown than just a *bare possible* chance. In the present case, it is contended that respondent was not in a position where the driver could be aware of his peril until he stepped out on the pavement, 65 feet from her car and since 148 feet (Veh. Code, § 670) is

the necessary stopping distance at 40 miles per hour, 83.3 feet at 30 miles per hour, there would not appear to have been the *clear* chance which is considered necessary under the Rodabaugh case. As far as the driver here stopping the car is concerned the Rodabaugh case quotes with approval the language from *Bagwill* v. *Pacific Elec. Ry. Co.*, 90 Cal.App. 114, 121 [265 P. 517] that ''certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise.'' In the present case, of course, stopping was not the only solution for the driver as she could have swerved. (See *Center* v. *Yellow Cab Co.*, 216 Cal. 205-208 [13 P.2d 918]. It was therefore a question for the jury to determine as to whether the driver should have in the exercise of ordinary care swerved to avoid hitting respondent, and whether or not appellant had the last clear chance to avoid the accident. In our opinion the evidence justified the giving of the instruction on last clear chance.

Appellants attack an instruction given at respondent's request which stated that the owner of the car, Thomas Aitken, Jr., would be liable in damages to the extent to which Mrs. Aitken would be liable if she were then alive. Respondent concedes the error in this instruction. He states that prior to trial appellants and respondent had orally agreed to eliminate instructing the jury on the limitations of Vehicle Code, section 402, subdivision (a), with the understanding that any judgment against Thomas Aitken could be reduced by stipulation to $5,000, but due to inadvertence such modification was not sought till after notice of appeal had been filed. Respondent concedes that the judgment should be modified so that nothing in excess of $5,000 may be recovered against Thomas Aitken, Jr.

Appellants contend that there was error in giving respondent's instructions 19, 20, 21 because they were repetitious and therefore overemphasized the duty placed on the operator of a motor vehicle. Respondent notes that appellants requested and received two instructions on contributory negligence and four on the duty of care imposed on a pedestrian. ▉ The instructions do not appear to be objectionable in any way nor unduly repetitious. Repetition alone *is not reversible error.* (*Rose* v. *Tandowsky*, 80 Cal.App.2d 927, 932 [183 P.2d 347].)

▉ Appellant contends that the instruction in connection with *section 671, Vehicle Code, instructed the jury that*

the driver was negligent if she failed to blow her horn. This is an incorrect interpretation. The jury were instructed that if they found from the evidence that it was "reasonably necessary in order to insure the safe operation . . . of her automobile" for her to have sounded the horn, and that if she failed to do so, they should find that she was negligent in her operation of the automobile.

Appellants maintain that it was error to refuse their instruction No. 19, which consisted of part of section 511 on prima facie speed limits. Some exhibits admitted over appellants' objection included a photograph showing a sign posted to the east of the point of impact indicating a 15 miles per hour zone. In *Rednall* v. *Thompson*, 108 Cal.App.2d 662 [239 P.2d 693], it was held that the type of instruction offered in the present case was properly refused since it failed to state all of the qualifications of section 511, "namely that compliance with the basic speed law set forth in section 510 of that code is a prerequisite of the lawfulness of speeds within the prima facie limits set forth in section 511." It has also been held that failure to instruct on section 511 is not reversible error when an instruction is given as was given here, that the speed of a vehicle considered as an isolated fact, and simply in terms of so many miles per hour is not proof either of negligence or of the exercise of ordinary care. (*Reich* v. *Long*, 97 Cal.App.2d 657, 661 [218 P.2d 589].) There was no error in refusing appellants' incomplete instruction.

For the first time, appellants in the reply brief contend that it was error to allow counsel to inquire into the question of settlement negotiations. There appears to be no good reason why this point was not raised in the opening brief. The court therefore does not need to consider it. (2 Cal.Jur. 734, § 424, and cases there cited.) Appellant cites *Squires* v. *Riffe*, 211 Cal. 370 [295 P. 517], and *Freeman* v. *Nickerson*, 77 Cal.App.2d 40 [174 P.2d 688]. In these cases there were references made to insurance which was not the case here. The adjuster Brown was brought in as a witness by defendants in order to identify and get into evidence a statement (Exhibit A) of the accident secured from respondent during the course of an investigation by Brown's adjusting firm. The statements appellants object to occurred on cross-examination. While objections were made, counsel did not assign it as misconduct or ask for a mistrial. Any error in this connection was not prejudicial.

In view of the foregoing, we conclude that the judgment must be modified as against Thomas Aitken, Jr., to limit recovery against him in the sum of $5,000 and as so modified the judgment must be affirmed.

Judgment as modified affirmed. Costs to appellants.

Nourse, P. J., and Dooling, J., concurred.