[Civ. No. 20221. Second Dist., Div. Three. Jan. 6, 1955.]

JOHN F. SULLIVAN, Respondent, v. GEORGE J. MATT et al., Appellants.

Slane, Mantalica & Davis, C. W. Cornell, Edward A. Hume and John H. Gordon for Appellants.

William C. Wetherbee for Respondent.

VALLÉE, J.—Appeal by defendants from an adverse judgment entered on a jury verdict in an action for damages for personal injuries.

The injuries resulted from an assault made on plaintiff by defendants Matt and Miller on May 10, 1951. For several years prior to that time plaintiff and defendants Matt and Miller were employees of defendant Southern Pacific Company. Matt became superintendent of the Los Angeles Terminal in April 1950. Miller was terminal trainmaster under Matt. At the time of the assault plaintiff was a yardman in the Los Angeles Terminal. Matt had been plaintiff's superior for several years. He had complete charge and supervision of plaintiff and all employees at the company's Los Angeles yard. Matt and plaintiff had a number of unpleasant experiences and Matt disliked plaintiff.

When Matt became superintendent, his secretary was Evelyn Heinbaugh. Plaintiff began keeping company with Mrs. Heinbaugh, seeing her both on and off the job. Matt objected, and overworked, abused, and harassed plaintiff. Plaintiff advised the division superintendent of Matt's treatment, but nothing was done about it. Matt told plaintiff and Mrs.

Heinbaugh that if they did not stop seeing each other they would lose their jobs; that it was bad for the company. In March 1951 plaintiff voluntarily reduced his rank from general yardmaster to yardmaster, and later to yardman, to avoid direct contact with Matt. Matt attempted intimacies with Evelyn Heinbaugh. When she resisted he became belligerent and she was compelled to take another position with the company where she was not working directly under him.

Matt testified he thought the conduct of plaintiff and Mrs. Heinbaugh was detrimental to Southern Pacific Company and that it constituted indifference and negligence in the performance of their duties in violation of company rule 801 which provided in part, "Indifference in the performance of duties will not be condoned." It was his duty to enforce the rule by assessing demerits or instituting disciplinary proceedings. Prior to the assault he did not take any action against either plaintiff or Mrs. Heinbaugh.

Matt knew plaintiff customarily parked his car at the H & H service station prior to going on his 2:59 p. m. shift and that Mrs. Heinbaugh accompanied him as a passenger. He was familiar with automobiles purchased by the company, but he did not make a practice of inspecting them. On the day of the altercation Matt called Miller, cancelled Miller's arrangement to join a Mr. Olson in picking up a new company Ford, and arranged to accompany Miller himself. While Matt and Miller were on duty they picked up the Ford and took it to the H & H service station to inspect it, but did not look inside it before the altercation.

The H & H service station was located at the northeast corner of Alice Street and San Fernando Road and was owned by a Mr. Herrick. The Southern Pacific Company yards were across San Fernando Road with a wire fence between the highway and the Southern Pacific property. Granada Street was one block north of Alice Street. At the north sidewalk of Granada Street there was a stairway to a bridge across San Fernando Road, providing ingress and egress to and from the company property. Between the service station and Granada Street there were a hardware store, a garage, a repair shop, and other buildings. The owner of the service station property used part of it as a parking lot. Southern Pacific Company and individual employees of the company parked cars on the lot.

At 2:38 p. m. on May 10, 1951, plaintiff, driving his car, drove into the parking lot accompanied by Mrs. Heinbaugh.

As he did, Mrs. Heinbaugh asked him if they had time for coffee. He was due to report at work at 2:59 p. m. Matt and Miller were on the parking lot; Matt next to the Ford, Miller behind it. As plaintiff parked his car, Matt in a loud voice said, ''There is that pimp and his two-bit chippie now.'' Plaintiff walked over to Matt and demanded that he go over and apologize to Mrs. Heinbaugh. Matt took a swing at plaintiff and Miller hit plaintiff on the jaw. Plaintiff said to Miller, ''What, you too?'' Miller said, ''Yes, you S.B.'' A fight followed, Matt and Miller beating plaintiff. The fight stopped, plaintiff walked away, Miller followed, the fight resumed, and Matt struck plaintiff on the head with a pick handle and ''the lights went out.'' Plaintiff was severely injured. During the fight Matt yelled at plaintiff and Mrs. Heinbaugh, ''You're both out of service for this.''

Immediately following the fracas, Matt went to the office of the company and ordered plaintiff out of service. Later plaintiff was charged with violation of company rule 801 in being quarrelsome and vicious, and with violation of rule 802 in entering into an altercation. After a hearing, plaintiff was discharged. Miller was later promoted to superintendent of the Union Station on Matt's recommendation. At the hearing Miller testified that plaintiff struck Matt two or three times before he (Miller) entered the altercation. At the trial of the present action Miller testified that plaintiff did not strike Matt before he (Miller) assaulted plaintiff.

The complaint alleged that defendants, and each of them, assaulted and beat plaintiff and did so with malice, wantonness, and ill will. The jury returned a verdict for plaintiff against all defendants for $10,000 compensatory damages and $15,000 exemplary damages. On motion of plaintiff, the exemplary damages were reduced to $10,000 to conform to the allegations of the complaint. Defendants appeal from the judgment which followed.

Southern Pacific Company contends that the rights, duties, and obligations of plaintiff and of the company were at the time in question governed by the Federal Employers' Liability Act.[1] The contention is predicated on the untenable premise that, as a matter of law, the parking lot was adjacent to the premises of the company and was plaintiff's only practicable route of immediate ingress to his work; therefore,

---

[1] 45 U.S.C.A. § 51.

plaintiff was engaged in interstate commerce and was acting in the course of his employment at the time.

Every common carrier by railroad while engaging in interstate commerce is liable in damages to any person suffering injury while he is so employed by such carrier in such commerce resulting from the negligence of any of the officers, agents, or employees of such carrier. (45 U.S.C.A. § 51.) ■ If the facts bring the case within the Federal Employers' Liability Act, that act controls. (*Hosman* v. *Southern Pac. Co.,* 28 Cal.App.2d 621, 624 [83 P.2d 88].) ■ As a general rule an employee is deemed to be in the course of his employment while following his only practicable route of immediate ingress and egress. (*Erie R. Co.* v. *Winfield,* 244 U.S. 170, 173 [37 S.Ct. 556, 61 L.Ed. 1057, 1065] ; *Cudahy Packing Co.* v. *Parramore,* 263 U.S. 418, 421 [44 S.Ct. 153, 68 L.Ed. 366, 368, 30 A.L.R. 532] ; *Bountiful Brick Co.* v. *Giles,* 276 U.S. 154, 158 [48 S.Ct. 221, 72 L.Ed. 507, 508, 66 A.L.R. 1402] ; *Monteiro* v. *Paco Tankers,* 93 F.Supp. 93, 95.) ■ Where more than one inference can be drawn from the evidence, the question whether an employee was, at the time of receiving the injury sued for, engaged in interstate commerce, is for the jury. (*Pennsylvania Co.* v. *Donat,* 239 U.S. 50 [36 S.Ct. 4, 60 L.Ed. 139, 140] ; *Southern R. Co.* v. *Lloyd,* 239 U.S. 496 [36 S.Ct. 210, 60 L.Ed. 402, 406] ; *Williams* v. *Southern Pac. Co.,* 54 Cal.App. 571, 582 [202 P. 356] ; cert.den. 258 U.S. 622 [42 S.Ct. 315, 66 L.Ed. 796] ; *Myers* v. *Southern Pac. Co.,* 14 Cal.App.2d 287, 293 [58 P.2d 387].) ■ Generally, whether an employee was acting in the course of his employment at the time of receiving the injury is a question of fact. (*Loper* v. *Morrison,* 23 Cal.2d 600, 607 [145 P.2d 1] ; *Industrial Indem. Co.* v. *Industrial Acc. Com.,* 108 Cal.App.2d 632, 635 [239 P.2d 477].) ■ It cannot be said, as a matter of law, that in using the parking lot plaintiff was going to his work by the only practicable route of immediate ingress. It seems obvious that the jury was warranted in finding, as it impliedly did find, that plaintiff was not engaged in interstate commerce and was not acting in the course of his employment at the time in question. The Federal Employers' Liability Act is not applicable.

Southern Pacific Company next contends the verdict against it is without support in the evidence. Plaintiff's injuries grew out of a private quarrel, so the argument goes, and

had nothing to do with the furthering of the business of the company in interstate commerce; and Matt's motivation sprang from some personal malice between himself and plaintiff, citing *Carr* v. *Wm. C. Crowell Co.*, 28 Cal.2d 652 [171 P.2d 5], *Yates* v. *Taft Lodge No. 1527*, 6 Cal.App.2d 389 [44 P.2d 409], and *Linck* v. *Matheson*, 63 Wash. 593 [116 P. 282]. In *Carr* v. *Wm. C. Crowell Co.*, *supra*, the court said (p. 656) : "If an employee inflicts an injury out of personal malice, *not engendered by the employment*, the employer is not liable." (Italics added.) In *Yates* v. *Taft Lodge No. 1527, supra*, it is said (p. 390) : "It is well settled that a master is liable for an assault committed by his servant where the act is done within the scope of the servant's employment and that he is not liable where the wrongful act is one which the servant was not authorized or empowered to do under the nature of his employment, but where the servant has, for some purpose of his own, departed from his master's business. . . . (P. 392.) In engaging in this controversy with the landlord over the interpretation of this contract, with which he was not concerned, we think he stepped aside from his duty and entered into a personal controversy, allowing his own resentment to lead him into an act which was outside the scope of his employment and beyond any express or implied authority conferred upon him by his employer." The Supreme Court of Washington in *Linck* v. *Matheson, supra*, stated (116 P. 284) : "On the other hand, if the assault and battery made upon plaintiff was occasioned by reason of ill will, jealousy, hatred, or other ill feeling on the part of the waiter or waiters, independent of their duty as agents of the proprietor toward the lady in question, then the proprietor would not be holden in damages."

Plaintiff argues that on three theories there was abundant evidence that Matt and Miller were acting for and in the interests of Southern Pacific Company in assaulting him and running him out of service: (1) If association on the job creates frictions arising out of the work which result in an assault of one employee upon another, the conduct of the employee may be imputed to the employer because it is related to the employment (*Carr* v. *Wm. C. Crowell Co.*, *supra*, 28 Cal.2d 652) ; (2) Matt and Miller were acting within the course of their employment in making the assault; (3) Southern Pacific Company, with full knowledge of the surrounding circumstances, approved and ratified the actions of Matt and Miller from which liability follows.

In *Carr* v. *Wm. C. Crowell Co., supra,* the court had this to say (p. 654): "It is sufficient, however, if the injury resulted from a dispute arising out of the employment. Under the provisions of section 2338 of the Civil Code a principal is liable for 'wrongful acts' of his agent committed 'in and as a part of' the principal's business. 'It is not necessary that the assault should have been made "as a means, or for the purpose of performing the work he (the employee) was employed to do."' . . . The employer's responsibility for the tortious conduct of his employee 'extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others' while acting in the scope of their employment."

Authorization of the master to perform an act which occasions injury to a third person need not be expressly conferred in order to fasten liability on the master. Responsibility attaches to the master if the act is committed by virtue of authority which fairly may be implied from the nature of the employment and the duties incident thereto. (*Jameson* v. *Gavett,* 22 Cal.App.2d 646, 651 [71 P.2d 937].)

Application of these principles to the facts impels the conclusion that there was evidence that the assault was "engendered by the employment" and was committed in the prosecution of the business of Southern Pacific Company. The evidence was ample to show that the assault was not perpetrated by Matt solely on his own account. It clearly indicated that one of his purposes was to further the interests of the company. We cannot say there was an entire absence of any evidence to support the implied finding of the jury that Matt and Miller were acting within the course of their employment at the time the assault was committed. We think the jury could have concluded that Matt and Miller were acting within the course of their employment.

At the close of plaintiff's case, Southern Pacific Company made a motion for a judgment of nonsuit. Before the grounds of the motion could be stated, the trial judge said he did not want to hear any argument. The company asserts error. The error, if any, was not prejudicial. It is patent from the record that if the grounds had been stated the motion would have been denied. Further, under the cir-

cumstances, it will be assumed the motion was made on all possible grounds; and we are not informed of any ground.

At the request of plaintiff the court gave the instructions quoted in the margin.[2]  Southern Pacific Company argues that these instructions were erroneous because they did not mention that the rights of the parties were to be determined under the Federal Employers' Liability Act and the defense that the assault was provoked by plaintiff.  The latter defense was fully covered by at least eleven instructions given at the request of defendants.  The theory of the instructions proposed by the company and given by the court was that it was not liable for the acts of Matt and Miller "unless and until plaintiff proves by a preponderance of the evidence that such acts were committed in and as a part of the transaction of the business of the Southern Pacific Company."  The company did not propose any instruction with respect to its theory that the facts brought the case within the Federal Employers' Liability Act, nor was any request made for

---

[2]The instructions read:  "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.

"A battery is any wilful and unlawful use of force or violence upon the person of another.

"If you find the defendant, George J. Matt, or defendant, Don K. Miller, as an employee and agent of defendant, Southern Pacific Company, and within the scope of his employment committed an assault and battery by using unlawful force and violence upon the person of plaintiff, your verdict should be in favor of plaintiff.

.       .       .       .       .       .       .

"The defendant, Southern Pacific Company, as principal, is responsible to plaintiff for the wrongful acts, if any, committed by George J. Matt or Don K. Miller as agents of said defendant, if such wrongful acts were committed in and as part of the transaction of the business of said defendant.

"If you should find in this case that George J. Matt or Don K. Miller committed an assault and battery upon the plaintiff and if you should further find that at the time and place of said assault and battery, if any, George J. Matt or Don K. Miller were acting in the business of said defendant, Southern Pacific Company, and within the scope of their authority, then said defendant is responsible for the acts of said George J. Matt or Don K. Miller and plaintiff is entitled to recover from defendant, Southern Pacific Company.

.       .       .       .       .       .       .

"Should you believe from all the evidence that defendant, George J. Matt or Don K. Miller, committed an assault and battery upon plaintiff for the purpose of securing his discharge from service with the Southern Pacific Company and should you further believe that such conduct, if any, on the part of said George J. Matt or Don K. Miller was in the course and scope of his employment with defendant, Southern Pacific Company, and for a purpose connected with and arising out of said employment, then you are instructed that said defendant, Southern Pacific Company, would also be liable for said assault and battery."

clarification of the instructions proffered by plaintiff. ▮ In the absence of a request for clarification of given instructions, or that a desired instruction be given, a party is in no position to complain on review of the court's failure to take such action. (*Freitas* v. *Peerless Stages, Inc.*, 108 Cal.App.2d 749, 757 [239 P.2d 671, 33 A.L.R.2d 778].)

Southern Pacific Company next says that the court erred in giving unduly repetitious instructions. The point is without merit. ▮ Repetition alone is not reversible error. (*Lebkicher* v. *Crosby*, 123 Cal.App.2d 631, 640 [267 P.2d 361].) We have examined the instructions given and find no undue repetition.

▮ It is next contended that the compensatory and exemplary damages were excessive and unsupported by any substantial evidence. Plaintiff was hit on the head with a pick handle. He sustained a cerebral concussion, a disturbance of the brain. Following the injury he vomited, had dizzy spells, nausea, and headaches. The dizziness and headaches persisted about nine months. Five or six weeks after the assault, everything blurred and he nearly fell under a moving railroad car while trying to work. For about nine months he was unable to work at a steady job. In the first nine months after the fracas his loss of earnings was about $3,780. A reasonable inference from the evidence is that in the following eight months his loss of earnings was about $4,960. No doubt he suffered indignity, mortification, and disgrace.

▮ The remedy for an excessive verdict is generally with the trial judge. ▮ A reviewing court may not interfere with an award of damages unless the amount is so outrageously excessive as to immediately suggest passion or prejudice. (*Hicks* v. *Ocean Shore Railroad, Inc.*, 18 Cal.2d 773, 785 [117 P.2d 850].) No such showing is made here. Defendants moved for a new trial. The motions were denied.

▮ The award of compensatory damages appears to be reasonable. The jury impliedly found that the assault on plaintiff was willful and malicious. ▮ The trial judge, in denying the motions for a new trial, approved the finding. (*Morgan* v. *French*, 70 Cal.App.2d 785, 790 [161 P.2d 800].) In an action for tort when the defendant has been guilty of oppression or malice, express or implied, the "plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294.) ▮ As a rule the granting or with-

holding of exemplary damages is wholly within the discretion of the trier of fact. (14 Cal.Jur.2d 813, § 182.) Its discretion is limited by the rule that exemplary damages should bear a reasonable relation to the actual damages. (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791, 801 [197 P.2d 713].) However, there is no fixed ratio by which to determine the proportion between the two classes of damages. (*Finney* v. *Lockhart*, 35 Cal.2d 161, 164 [217 P.2d 19].) ▆▆ In the present case it is apparent that the relation is reasonable and that there was no abuse of discretion in making the awards. (*Cf. State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330, 340-341 [240 P.2d 282].) The award of compensatory damages against Southern Pacific Company and the award of compensatory and exemplary damages against Matt and Miller may not be disturbed.

The award of exemplary damages against Southern Pacific Company cannot be sustained. There was no evidence of malice on its part. Merely retaining Matt as superintendent and Miller as trainmaster in the service was not, in our opinion, a ratification of their tortious acts. In the cases of both Matt and Miller, special skill and experience were necessary. ▆▆ It would be unfair to both the employer and employee to hold that the mere retention of an employee in service, whose special skill and experience were necessary, is a ratification of his malicious acts committed within the course of his employment. The company was not required to retain Sullivan and to discharge Matt and Miller or to discharge all three of them in order to disaffirm the conduct of Matt and Miller and thus shield itself from liability for their malicious acts. Since the discharge of Sullivan was held proper on a hearing under the Railway Labor Act (45 U.S.C.A. § 151 et seq.) the good faith and proper motives of the company in retaining Matt and Miller may not be questioned. When the actions of the responsible representatives of the company were merely negative, consisting only of keeping Matt and Miller (skilled, experienced, and holding responsible positions in the service of the company), it cannot be said that they ratified the brutal conduct of Matt and Miller and shared in their malicious motives.

In other respects Matt and Miller make substantially the same contentions as Southern Pacific Company. None of them may be sustained.

The judgment against defendants Matt and Miller is affirmed. The judgment against defendant Southern Pacific

Company is modified by striking therefrom the award of "$10,000.00, as punitive or exemplary damages"; in all other respects it is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Petitions for a rehearing were denied January 26, 1955, and appellants' petitions for a hearing by the Supreme Court were denied March 3, 1955. Schauer, J., was of the opinion that the petitions should be granted.